In the Matter of the Application of GEORGE McANENY et al., Constituting the Transit Commission, Respondents, for an Order Requiring the BOARD OF ESTIMATE AND APPORTIONMENT OF THE CITY OF NEW YORK to Appropriate the Sum of Money Required to Enable Said Commission to Perform Its Duties.

### (Two Proceedings.)

**Constitutional law — Public Service Commissions Law — New York city — rules of statutory construction — acts amending Public Service Commissions Law, creating transit commission and defining its jurisdiction, powers and duties, constitutional and valid — duty of board of estimate and apportionment of city of New York to make appropriations required and requested by commission to enable it to perform its functions — provision authorizing commission to apply to Appellate Division for order compelling board to make appropriation valid — transit commissioners are not city officers — act is not a special city law — act is general in terms and not an act of local legislation.**

1. Established rules of statutory construction are, that the legislative power is unlimited, except as restrained by the Constitution; that every act of the legislature is presumed to be in harmony with the Constitution unless the contrary clearly appears; that if two constructions be permissible, then the one making the act valid must be adopted; that the legislature, within constitutional limitations, may retake to itself powers delegated to boards or localities and again assume the direct control of matters pertaining to local government; and that a municipal corporation has no power except such as is given to it by the legislature, and any power thus given may thereafter be modified, diminished or recalled.

2. In so far as chapter 134 of the Laws of 1921, as amended by chapter 335 of the Laws of 1921, delegates power to the transit commission, created by the statute, to demand and receive appropriations from the board of estimate and apportionment of the city of New York for the purpose of enabling it to properly perform the duties imposed upon it, the act is valid.

3. It was the duty of the board of estimate and apportionment, upon receiving requisitions from the transit commission, to make the appropriations requested and where it has neglected or refused to

do so the commission was authorized to apply to the court for what in effect was a peremptory mandamus to compel it to do so.

4. A suggestion that the provision of the act which permits the commission to apply to the Appellate Division, where the board neglects and refuses to make appropriations, for an order compelling it to do so, makes the act unconstitutional, in that it deprives the court of discretion, is untenable. The court may grant or refuse the order in the proper exercise of its discretion.

5. A contention that the transit commissioners are city officers within the meaning of section 2 of article 10 of the State Constitution cannot be sustained. They are not city officers. Furthermore, the office of transit commissioner is a new office and the legislature could constitutionally fill the same by designating the persons to act as commissioners. (People ex rel. Simon v. Bradley, 207 N. Y. 592, followed.)

6. The act is not a special city law, and, therefore, its passage by the legislature without transmission to the mayor of the city of New York was not invalid as violative of section 2 of article 12 of the State Constitution. (Admiral Realty Co. v. City of New York, 206 N. Y. 110, 140, followed.)

7. A contention that the act violates section 18 of article 3 of the State Constitution in that it applies only to cities having a population of over one million; that the powers specified in the act are to be exercised and carried out only by the transit commissioners of the first district, which includes only the city of New York; that New York is the only city of the state having a population of over one million, and it, therefore, follows that the act is limited to such city and becomes a local law, is fallacious. The act is general in terms. It applies to all cities in the state having a population of a million or more. It is a valid legislative enactment and not an act of local legislation.

Matter of McAneny v. Board of Estimate & Apportionment, 198 App. Div. 205, affirmed.

(Argued November 29, 1921; decided January 17, 1922.)

APPEALS from two orders of the Appellate Division of the Supreme Court in the first judicial department, entered July 6, 1921, directing the board of estimate and apportionment of the city of New York to make certain appropriations pursuant to the requisition of the transit commission for the salaries and expenses of said commission.

*John P. O'Brien, Corporation Counsel (Hiram W. Johnson, Edgar J. Kohler* and *William E. C. Mayer* of counsel), for appellant. The applications for orders directing and requiring the board of estimate and apportionment to make the appropriations should have been denied. (*Warren* v. *Union Bank of Rochester,* 157 N. Y. 259; *Matter of Mitchel* v. *Cropsey,* 177 App. Div. 663; *Sun Pub. Co.* v. *Mayor, etc.,* 152 N. Y. 257; *Schieffelin* v. *Hylan,* 188 App. Div. 192; 227 N. Y. 593; *Matter of Rapid Transit R. R. Comrs.,* 197 N. Y. 81; *Stuart* v. *Palmer,* 74 N. Y. 183; *People* v. *Klinck Packing Co.,* 214 N. Y. 121; *Matter of Emerson* v. *Buck,* 230 N. Y. 380; *People* v. *Hurlbut,* 24 Mich. 106; *People* v. *Detroit Common Council,* 28 Mich. 243; *People* v. *Albertson,* 55 N. Y. 50; *People ex rel. Town of Pelham* v. *Village of Pelham,* 215 N. Y. 374.) The act, Laws of 1921, chapter 134, as amended by Laws of 1921, chapter 335, is invalid and unconstitutional. (N. Y. Const. art. 3, § 18; art. 10, § 2; *C. C. Traction Co.* v. *Kingston Ry. Co.,* 153 N. Y. 540; *Ingersoll* v. *Nassau El. Ry. Co.,* 157 N. Y. 453; *People* v. *O'Brien,* 111 N. Y. 1; *Matter of Quinby* v. *P. S. Comm.,* 224 N. Y. 244; *Matter of Internat. Ry. Co.* v. *P. S. Comm.,* 226 N. Y. 474; *People ex rel. Pelham* v. *Vil. of Pelham,* 215 N. Y. 374; *Matter of Brenner,* 170 N. Y. 185; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.,* 174 N. Y. 417; 199 U. S. 1.) The failure and refusal of the legislature to transmit this act when pending as a bill to the mayor of the city of New York for consideration with a view to its rejection or acceptance on behalf of the city, pursuant to article 12, section 2, renders it unconstitutional as a whole. (*Gubner* v. *McClellan,* 130 App. Div. 716; *Chrystal* v. *New York,* 63 App. Div. 93; *Sun Pub. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Exempt Firemen's Assn.* v. *Trustees,* 34 App. Div. 138; *Matter of N. Y. El. R. R. Co.,* 70 N. Y. 327; *People* v. *Supervisors of Chautauqua Co.,* 43 N. Y. 10; *McGrath* v. *Grout,* 69 App. Div. 314.)

*Francis M. Scott* and *Godfrey Goldmark* for respondents. There is a presumption of constitutionality attached to an act of the legislature, and to successfully attack such an act on constitutional grounds some definite provision of the Constitution must be pointed to as having been violated. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 15; *City of Worcester* v. *Street Railway Co.,* 196 U. S. 539; *City of Pawhuska* v. *Pawhuska Oil Co.,* 250 U. S. 394; *People* v. *Morris,* 13 Wend. 325; *People* v. *Briggs,* 50 N. Y. 553; *People* v. *Kerr,* 27 N. Y. 188; *Darlington* v. *City of New York,* 31 N. Y. 165; *Hunter* v. *Pittsburgh,* 207 U. S. 161.) The objection to the statute upon the ground that it violated section 2 of article 10 of the Constitution cannot be sustained. (*Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Gubner* v. *McClellan,* 130 App. Div. 716; *People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *Matter of Morgan* v. *Furey,* 186 N. Y. 202.) The claim that chapter 134, Laws of 1921, was never validly enacted because it was not transmitted to the mayor of the city of New York for acceptance or non-acceptance is untenable. (*Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Gubner* v. *McClellan,* 130 App. Div. 716.) The circumstance that the act provides that the transit commission shall be the judge of the sums necessary to carry on the work devolved upon it, and leaves to the board of estimate and apportionment no discretion as to the amount to be appropriated presents no constitutional objection. (*People ex rel. Simon* v. *Bradley,* 207 N. Y. 592.)

*Charles D. Newton,* Attorney-General (*Charles A. Collin* and *William M. Parke* of counsel), for State of New York. The provisions of the acts of 1921 (Chaps. 134 and 335), for the appointment of three transit commissioners, by the governor by and with the advice and consent of the senate, and for the transfer to them of the jurisdiction and powers of their immediate predecessors, are con-

stitutional and valid; the three transit commissioners, respondents herein, thus appointed, are *de jure* officers; they are duly authorized to exercise all the jurisdiction and powers thus transferred to them; and they are also duly authorized to exercise the new jurisdiction and powers conferred upon them by such of the new provisions of the said acts of 1921 (Chaps. 134 and 335) as are consistent with the Constitution. (*Sun Pub. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Gubner* v. *Mayor, etc.,* 130 App. Div. 716; *Admiral Realty Co.* v. *Mayor, etc.,* 206 N. Y. 110; 151 App. Div. 888.) The State Constitution is, in no respect, violated by any of the provisions of the acts of 1921 (Chaps. 134 and 335) conferring the new jurisdiction and powers upon the three transit commissioners, respondents herein, in addition to the jurisdiction and powers transferred to them from their immediate predecessors. (*Admiral Realty Co.* v. *Mayor, etc.,* 206 N. Y. 124; *Sun Pub. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Gubner* v. *Mayor, etc.,* 130 App. Div. 716; *Matter of Brenner,* 170 N. Y. 185; *People ex rel. Bush* v. *Houghton,* 182 N. Y. 301; *People* v. *Cosmo,* 205 N. Y. 91; *Moot* v. *Moot,* 215 N. Y. 204.)

MCLAUGHLIN, J. In 1921 the legislature passed chapter 134 amending the Public Service Commissions Law in certain important particulars and added thereto article six (sections 105–111). The act is entitled: " An Act to amend the public service commissions law, in relation to creating the public service commission and the transit commission, defining the jurisdiction, powers and duties of such commissions, and abolishing the public service commission of the first district, the public service commission of the second district and the office of transit construction commissioner."

Section 1 provides that the title of chapter 480 of the Laws of 1910 " is hereby amended to read as follows: An act in relation to the public service commission and

the transit commission, constituting chapter forty-eight of the consolidated laws." The act was amended in some particulars by chapter 335 of the Laws of 1921.

It is unnecessary to consider the various amendments, it being sufficient for the determination of the question presented by this appeal to confine the discussion to the validity of so much of the act as is challenged by the appellant. It abolishes the public service commission for the first district and creates in its place a transit commission consisting of three persons, to be appointed by the governor by and with the consent of the senate. It provides: " There shall be a transit commission for cities containing a population of more than one million inhabitants, according to the last preceding federal census or state enumeration, which shall possess the powers and duties hereinafter specified, and also all powers necessary or proper to enable it to carry out the purposes of this chapter." (Section 4a.) The jurisdiction of the commission is specifically set forth. (Section 5a.) The salaries of the commissioners, secretary and counsel are to be paid monthly by the state treasurer upon the order of the comptroller, out of funds provided therefor. All other salaries and expenses of the commission are to be paid by the city in which such commission has jurisdiction. The board of estimate and apportionment, or other board or public body on which is imposed a duty, and in which is vested the power of making appropriations of public moneys for the purposes of the city government in such city shall, from time to time, on requisition duly made by the commission, appropriate such sums of money as the commission shall certify to be necessary to properly enable it to perform the duties imposed upon it. " Such appropriation shall be made forthwith upon presentation of such a requisition without revision or reduction and without the imposition of any conditions or limitations by such board or body, and such appropriation by it is hereby declared to be a ministerial act. If such board

or body shall fail to appropriate such amount as such transit commission shall deem requisite and necessary, such commission may apply to the appellate division of the supreme court in the first judicial department, on notice to such board or body, for an order requiring such board or body to make such appropriation." (Sec. 14, subd. 2.)

The transit commission delivered to the board of estimate and apportionment of the city of New York a requisition under the act for $360,895.78, " which sum said Transit Commission hereby certifies is necessary to properly enable it to do and perform, or cause to be done and performed, for the period from April 25th, 1921, to June 30th, 1921, the duties imposed upon said Commission by said law." The commission also delivered, at the same time, another requisition for $1,083,327, " which sum said Transit Commission hereby certifies is necessary to properly enable it to do and perform, or cause to be done and performed, for the six months ending December 31, 1921, the duties imposed upon said Commission by said law."

These requisitions not having been honored by the board of estimate and apportionment, the transit commission applied to the Appellate Division, first department, on notice, for an order requiring the board to make such appropriations. The motions in each case were granted and orders entered to that effect, from which the board appealed to this court.

The validity of these orders, both of which were argued at the Appellate Division and in this court together, and will be so considered by me, is attacked upon various grounds, which, in the last analysis, resolves itself into an assertion that the entire act under which they were made is unconstitutional. The principal, and substantially the main attack is upon an alleged violation of article 10, section 2; article 12, section 2, and article 3, section 18 of the State Constitution.

Article 10, section 2, provides that, "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose."

Article 12, section 2, classifies the cities of the state according to population as determined by the last state enumeration as from time to time made, as follows: "The first class includes all cities having a population of one hundred and seventy-five thousand or more; the second class, all cities having a population of fifty thousand and less than one hundred and seventy-five thousand; the third class, all other cities. Laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to all the cities of one or more classes; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section." Then follows a provision to the effect that after a special city law "has been passed by both branches of the legislature, the house in which it originated shall immediately transmit a certified copy thereof to the mayor of such city, and within fifteen days thereafter the mayor shall return such bill to the house from which it was sent, *  *  *" with a statement that it is either accepted or rejected.

Article 3, section 18, provides, among other things, that "The Legislature shall not pass a private or local bill in any of the following cases *  *  *. Granting to any corporation, association or individual the right to lay down railroad tracks *  *  *. The Legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which in its judgment, may be provided for by general laws."

In considering whether an act of the legislature be constitutional, the history connected with its origin must be taken into account.   The Public Service Commissions Law was passed in 1907 (Chap. 429).   It took the place of the Rapid Transit Act passed in 1891 (Chap. 4).   Both of these acts, as originally passed, have been amended from time to time down to the legislative session of 1921. The Public Service Commissions Law provided that the jurisdiction and powers of commissioners referred to in the Rapid Transit Act should be transferred, first, to five public service commissioners of the first district (Laws of 1907, chap. 429, sec. 5, subd. 6); then to one transit construction commissioner (Laws of 1919, chap. 520); and finally to three transit commissioners (Laws of 1921, chap. 134).

By section 4a of the act a transit commission is created for cities having a population of over a million inhabitants, according to the last preceding federal census or state enumeration.   In this commission is vested the power to regulate railroads and street railroads therein, and there is also given to it all the powers and duties given to the board of rapid transit railroad commissioners, the public service commission of the first district, and the transit construction commissioner; in other words, there was given to the transit commission, by the act under consideration, all of the powers theretofore possessed by bodies having control of rapid transit.   In so far as the power has been delegated by the state to a commission created by it, to demand and receive appropriations from the board of estimate and apportionment for the purpose of enabling it to properly perform the duties imposed upon it, I do not believe it can be seriously questioned but what the act is a valid legislative enactment.

We are brought, therefore, directly to a consideration of the validity of the orders appealed from.   If such validity alone be considered, then the question presented

is a very narrow one, viz., Was it the duty of the board of estimate and apportionment, upon receiving the requisitions from the transit commission, to make the appropriations requested? To this question there can, as it seems to me, be but one answer. It was its duty to do so. The act so declares. In making the appropriations the board acts ministerially. It has no discretion as to the amount to be appropriated. The purpose of this provision in the act is obvious. It is to prevent the board of estimate and apportionment from defeating the purposes of the act by withholding appropriations. The board having neglected or refused to make the appropriations called for, the commission was authorized to apply to the court for what in effect was a peremptory mandamus to compel it to do so.

It is suggested that this provision of the act which permits the commission to apply to the Appellate Division, where the board neglects and refuses to make appropriations, for an order compelling it to do so, makes the act unconstitutional, in that it deprives the court of discretion; that it must grant the order in any event. But this is not so. It may grant or refuse the order in the proper exercise of its discretion. Where a public officer or board is under a legal obligation to do something and refuses to act, then it becomes the duty of the court, on a proper application, in the exercise of its discretion, to compel action. The purpose of the commission in asking for the appropriation, or to what use the money appropriated is to be put, does not concern the board. As well might a register of deeds of conveyance refuse to record a deed until the purpose of the one seeking to have it recorded has been disclosed, as for the board of estimate and apportionment, under this act, to refuse to make the appropriation until the purpose of the commission be disclosed.

It must be borne in mind in this connection that the legislature has complete control over the finances of the city. It may specify the amount and purpose for which

the city's funds are to be used.   It can make up the entire city budget for itself, as it did before the board of estimate and apportionment was created.   The board, as an agent of the state, was established as a convenient body to estimate the amounts which might be required from year to year to pay the city's expenses.   But the legislature did not, by the creation of such board, surrender any of the power which it had as to the control or use of the money to be raised.   Indeed, there has never been a time when the determination of what these expenses should be has been left wholly to the board; on the contrary, an investigation will disclose that the legislature has always reserved and freely exercised the power to determine for itself, or by delegation to some other body, what amount should be raised and applied to particular purposes.   A large proportion of the city's budget has been and now is composed of what are known as mandatory appropriations, and as to the amount of which the board of estimate and apportionment has no discretion.   The act under consideration simply adds one more mandatory appropriation to the list.   All the act does in this respect is to transfer from one board of legislative creation to another board of like creation, the power to determine how much money shall be appropriated for the purposes specified in the act.   This the legislature could constitutionally do.

I am of the opinion, therefore, upon the record before us, that the orders appealed from were properly made and should be affirmed.   I do not care, however, to place my decision solely upon the ground stated.   In view of the public interest and the importance which the act bears to the rapid transit situation in the city of New York, it seems to me the principal objections urged against it should be considered for the purpose of determining whether the act for the reasons urged might render it unconstitutional.

The act, in addition to amending the Public Service

Commissions Law in certain respects, and in addition to vesting in the transit commission certain regulatory functions, and all the powers and duties under the Rapid Transit Act of 1891, as amended, vests in the transit commission, by article 6, and as a grant of a distinct and independent power, the right and duty to prepare a plan of readjustment for the relief of the emergency which is declared to exist, and which plan shall accomplish as nearly as may be, three purposes (section 106):

(1) The combination, rehabilitation, improvement and extension of existing railroads, so that service thereon may be increased and improved to the fullest extent possible.

(2) The receipt, as soon as practicable, by the city of sufficient returns from the operation of the railroads, so that the corporate stock or bonds issued by the city for the construction of rapid transit railroads may be exempted in computing the debt incurring power of the city under the Constitution of the state.

(3) The assuring to the people of the city the continued operation of the railroads at the present or lowest possible fares consistent with the just valuations of the railroads and their safe and economical operation.

The method by which these purposes are to be accomplished is specifically pointed out in section 107 and no plan is to become effective until that section has been complied with.

All the powers and duties under the Rapid Transit Act, and under any other law, and under any contract of the board of rapid transit railroad commissioners, of the former public service commission of the first district, as successor to such board of rapid transit railroad commissioners, of the transit construction commissioner, as successor to the powers and duties of such public service commission of the first district, and of the local authority of such city to approve contracts or modifications of contracts under any provision of the Rapid Transit Act, or of any contract heretofore made, are

transferred to and vested in the commission, together with such other and necessary powers as may be requisite to the efficient performance of the duties imposed upon the commission by such laws and contracts.   (Sec. 108.)

The commission is not authorized to make any new contract or modify any contract for the construction, equipment, maintenance or operation of the railroads, or any of them, without the approval or consent of the local authority, where such new contract or modification of an existing contract requires to carry it out the authorization by the local authority of corporate stock or bonds of the city in addition to the corporate stock or bonds required to carry out such existing contract, or would result in replacing within the debt limit of the city under the Constitution of the state, corporate stock or bonds which have been excluded therefrom under orders of the Appellate Division of the Supreme Court, or where such contract or modification of an existing contract adopts or so modifies a route or routes and general plan of a railroad as to require consents therefor under section eighteen of article three of the Constitution of the state. (Sec. 109.)

The foregoing provisions of the act are substantially all which it seems to me are necessary to be considered.   In determining whether the act be a valid legislative enactment, certain established rules of statutory construction must be kept in mind, some of which are:

(a) That the legislative power is unlimited, except as restrained by the Constitution (*People ex rel. Central Trust Co.* v. *Prendergast*, 202 N. Y. 188);  (b) that every act of the legislature is presumed to be in harmony with the Constitution unless the contrary clearly appears (*People ex rel. Simon* v. *Bradley*, 207 N. Y. 592, 610);  (c) that if two constructions be permissible, then the one making the act valid must be adopted (*Matter of N. Y. & L. I. Bridge Co.* v. *Smith*, 148 N. Y. 540; *People* v. *Lochner*, 177 N. Y. 145);  (d) that the legislature, within

constitutional limitations, may retake to itself powers delegated to boards or localities and again assume the direct control of matters pertaining to local government (*People* v. *Tweed*, 63 N. Y. 202; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *People ex rel. Morrill* v. *Board of Supervisors of Queens Co.*, 112 N. Y. 585); and (e) that a municipal corporation has no power except such as is given to it by the legislature, and any power thus given may thereafter be modified, diminished or recalled. (*City of Worcester* v. *Worcester Con. St. Ry. Co.*, 196 U. S. 539; *City of Pawhuska* v. *Pawhuska Oil & Gas Co.*, 250 U. S. 394.)

*First.* As to the assertion that the act violates article 10, section 2, of the Constitution. What is claimed in this respect is that the transit commissioners are city officers within the meaning of that provision. The assertion is unfounded and has, in effect, been so determined by this court. They are not city officers. The fact that they happen to be at the present time considering rapid transit solely for the city of New York does not necessarily make them officers of that city. The power formerly given to and vested in the rapid transit commissioners was transferred to the public service commissioners and under the act now under consideration it has been transferred to the transit commissioners. The legislature had a right to make these changes. (*People ex rel. Simon* v. *Bradley, supra.*) In the case just cited the legislature created a railway terminal commission for the city of Buffalo. The act was attacked, as here, upon the ground that the commissioners were local officers whom the legislature under the Constitution could not select. The court held otherwise. The decision was placed upon the ground that the state, in its sovereign capacity, might, subject to constitutional limitations, resume powers delegated to localities and either by itself or through an agent, directly control matters of local government. It was there pointed out that the commissioners were not

only new officers, but their duties were new, even though they included some duties which had theretofore been performed by city officers.

This decision is applicable to the commissioners appointed by the act under consideration. The office of transit commissioner, whether regarded as a state or city office, is essentially a *new office*, to which are attached *new duties*, with *increased powers* over those given to the rapid transit commissioners, the public service commissioners and the transit construction commissioner. The commission is given the power to prepare and put into operation a plan for readjustment of transit conditions in the city of New York. The powers given are broad and extensive, and sufficient to impose upon the commission the duty to reorganize the whole transit situation in such city. The members of the commission are *new officers*, not only in name, but in fact. Their duties are essentially new duties, although they include some duties theretofore performed by other boards or officers. The office of transit commissioner being a new office, the legislature could constitutionally fill the same by designating the persons to act as commissioners. (*People ex rel. Simon* v. *Bradley, supra; Matter of Morgan* v. *Furey*, 186 N. Y. 202; *Sun Printing & Publishing Assn.* v. *Mayor, etc., of N. Y.*, 8 App. Div. 230; affd., 152 N. Y. 257; *People ex rel. Metropolitan St. Ry. Co.* v. *State Board of Tax Commissioners*, 174 N. Y. 417.)

*Second.* It is next urged that the act is unconstitutional in that it violates article 12, section 2, the claim in this respect being that the act is a special city law, since it does not apply to all cities of the first class, and could not, therefore, become a valid legislative enactment because it was not transmitted to the mayor of the city of New York before it was passed. If the act be a special city law, then the claim is well founded. I am of the opinion, however, that it is not a special city law, and this court, in effect, so decided in *Admiral Realty Co.* v.

*City of New York* (206 N. Y. 110, 140). It is true that in that case the statute under consideration was the Rapid Transit Act which became a law before this provision of the Constitution went into effect, but the decision of this court, as appears from the opinion delivered, was not put solely upon that ground. Judge Hiscock (now chief judge), who wrote for the majority of the court, said: " In the second place, the act is not one of those contemplated by the provision in question. The latter contemplates laws which relate to municipal property and affairs and which may be described, as the provision does describe them, as ' city ' laws. To come within the precise provision which is invoked here it would be necessary to hold that the Rapid Transit Act was ' a special city law.' It seems to me that this term could not be regarded as a reasonable description of the statute before us. It was adopted not only for the benefit of the cities which, of course, would be affected, but of the public at large, and it confers broad powers, including that of the granting of franchises. It is a much more general law than is contemplated by the provision in question. (*People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Matter of Henneberger,* 155 N. Y. 420.)"

The words quoted are as applicable to the present case as they were to the *Admiral Realty* case and the decision there made is controlling here.

*Third.* It is claimed that the act violates article 3, section 18, of the Constitution, the contention being that the act applies only to cities having a population of over one million; that the powers specified in the act are to be exercised and carried out only by the transit commissioners of the first district, which includes only the city of New York; that New York is the only city of the state having a population of over one million, and it, therefore, follows that the act is limited to such city and becomes a local law. This reasoning is plausible but fallacious. The act is general in terms. It applies to

*all* cities in the state having a population of a million or more. It may be conceded that at the present time it is applicable only to the city of New York, but if so it by no means follows that it was intended only for that city, since there may and probably will in the near future be one or more cities to which it will be applicable. Certainly there is no conclusive presumption to the contrary.

Rapid transit for the city of New York has, for many years, been a matter of public interest, affecting not only the people of that city, but of the whole state. It has been generally regarded as a state affair. The history of legislation on the subject shows it. The Rapid Transit Act (Laws of 1891, chap. 4) appointed as commissioners persons in office under a former act. The act of 1894 (Chap. 572) named five commissioners. The act was held to be constitutional. (*Sun Printing & Pub. Assn.* v. *Mayor, etc., of N. Y., supra.*) Power to fill vacancies in the board of rapid transit commissioners was given to the mayor. (Laws of 1906, chap. 472.) In 1907 (Chap. 429) this power was taken from the mayor and given to the governor of the state, and the power which had theretofore vested in the rapid transit commission was transferred to a newly created commission. The same act provided that the expenses of the commission incident to rapid transit construction in the city of New York should be paid by that city. That act was held valid. (*Gubner* v. *McClellan,* 130 App. Div. 716.) In 1919 (Chap. 520) the Public Service Commissions Law was amended by substituting in the place of the commissioners therein provided for, one transit construction commissioner, to be appointed by the governor of the state, to whom was transferred all the powers and duties of the former rapid transit board or any other board or body having to do with rapid transit in the city of New York; and in 1921 the act under consideration was passed, by which all the powers theretofore lodged in any board or body were

transferred to the transit commission, together with increased powers, and three commissioners were named instead of one. All of the legislation bearing on the subject has for many years recognized that a duty rested upon the legislature to provide for rapid transit, such duty to be performed by itself or by an agent designated for the purpose, a function which the state, in its sovereign capacity, had a right to exercise irrespective of the city authorities, since it concerned the whole state just as much as the maintenance of highways or the management of other public utilities.

The act, as I have indicated, is general in its terms and applicable to all cities of a certain population. In my opinion it is a valid legislative enactment and not an act of local legislation. (*Admiral Realty Co.* v. *City of New York, supra; Matter of New York El. R. R. Co.,* 70 N. Y. 327; *Matter of Church,* 92 N. Y. 1; *People ex rel. N. Y. Electric Lines Co.* v. *Squire,* 107 N. Y. 593; *Matter of Henneberger, supra.*)

Several other questions were argued, but they do not seem to me to be of sufficient importance, in disposing of the present appeal, to be here considered.

The orders appealed from should be affirmed, with costs.

HOGAN, CARDOZO and CRANE, JJ., concur in the result upon the ground that chapter 134 of the Laws of 1921, even if it could be held to be unconstitutional and void in some particulars or contingencies, is not unconstitutional and void in its entirety; that provision for the financial necessities of the transit commission is, therefore, necessary; that section 14 of the act imposing upon the board of estimate and apportionment the duty to honor the requisition of the commission, and vesting the Appellate Division with jurisdiction to enforce compliance with that duty is a valid exercise of legislative power; and that the orders under review are, therefore, right, and

must be affirmed; but they reserve their judgment upon the question how far the rights of the city of New York in railroads which it owns, may be divested or modified under article 6 of the act until that article has been passed in conformity with article 12, section 2, of the Constitution of the state, since a decision as to the scope of the last mentioned section is not necessary to the determination of this appeal, and may be affected by circumstances and contingencies which are now imperfectly disclosed.

HISCOCK, Ch. J., POUND and ANDREWS, JJ., concur with McLAUGHLIN, J.; HOGAN, CARDOZO and CRANE, JJ., concur in result in memorandum.

Orders affirmed.