STANTON D. AUSTIN and Others, Appellants, *v.* WILLIAM A. DE VOLT, as President, JOHN VANDEWALKER and Others, as Trustees, and WILLIAM E. BARKER, as Treasurer, Respondents, Impleaded with FLORENCE F. PUGH, as Clerk, All of the Village of Trenton, Oneida County, New York, All Constituting the Board of Trustees and the Village Board and the Officers of the Village of Trenton, Oneida County, New York, and the VILLAGE OF TRENTON, Defendants.

Fourth Department, May 5, 1937.

*J. Theodore Cross,* for the appellants.

*J. Herbert Gilroy,* for the respondents.

SEARS, P. J. The appellants, taxpayers of the village of Trenton, Oneida county, N. Y., seek in this action to restrain the village officers from proceeding to carry out a plan for the establishment of a water system in the village and from expending any money in respect thereto. The establishment of a water system in the village of Trenton has been under consideration for a number of years. A proposition for the establishment of such a system with water to be obtained from wells to be owned by the village was submitted to the electors on the 8th day of March, 1932, and, Trenton being a very small village, was defeated by a vote of forty-seven to thirty-four. Again, on March 13, 1934, another proposition for the establishment of a water system with water to be obtained from the mains of a Utica company was submitted to the electors and adopted by a vote of forty-three to forty-two. There followed an attempt on the part of the trustees of the village to obtain aid from the Federal Public Works Administration for carrying out the project on the lines that had been approved by the voters, but this came to nothing. In September, 1934, James P. Wells, an engineer, presented to the trustees of the village a plan for a water system, different from either of the propositions submitted to the electors, though in using wells to be owned by the village as the source of water supply it had similarity with the plan first submitted to the electors and disapproved in 1932. On January 4, 1935, the board of trustees adopted a resolution as follows:

" *Resolved,* That the Board of Trustees of the Village of Trenton, do hereby determine that public interest demands the creation of a water system for the Village of Trenton, and do hereby determine that said water system shall be created in such manner as may be approved by the Water Power and Control Commission of the State of New York by developing the necessary number of springs on the David Richards property located near Prospect by fencing in so much of said property as may be necessary, by constructing a storage basin as may be proper, by connecting said storage basin and spring by pipe line with the intake pipe leading into the main which shall conduct the waters thereof to the Village of Trenton, and the construction of water mains and appurtenances within the Village of Trenton and by acquiring by purchase, if the Board of Trustees of said Village can agree with the respective owners as to the proper price or compensation therefor, otherwise by condemnation, the lands, streams, water, and water rights necessary to be had or acquired in connection with such development, all at

an expense not exceeding the sum of $25,000.00; that the probable life of such improvement will be forty years; that the sum of $25,000.00 be appropriated to the purpose of constructing such system, including the acquisition of the land, streams, water and water rights necessary therefor, and the payment of the necessary and proper engineering, legal and contingent expenses connected therewith; that the Board of Trustees borrow on the credit of the Village the sum of $25,000.00 or so much thereof as may be needed for such purposes, and issue bonds therefor, namely: 50 bonds in number for $500.00 each payable — one bond of $500.00 on the 1st day of August, 1935, and one bond of $500.00 payable each August 1st thereafter up to and including August 1st, 1961, and two bonds of $500.00 each on the 1st day of August, 1962, and four bonds of $500.00 each on the 1st day of August in each year thereafter, until and including the year 1974, with interest to be paid on said Bonds from the date of issue on January 1st and July 1st of each year until said Bonds shall be fully paid of interest; and that there shall be raised annually by the levy and collection of a tax upon the taxable property of said Village a sum, which with the revenues derived from said system of water shall be sufficient to pay the principal and interest on the said several Bonds as such principal and interest shall mature and become due and payable. Such project to be in conjunction with Government aid."

Another resolution of the board adopted the same day provided for the employment of James P. Wells as engineer and authorized application to the State Water Power and Control Commission for approval and the negotiation of contracts for the carrying out of the plan upon the approval of the State Commission being given. On July 22, 1935, the trustees adopted a further resolution authorizing the village president to sign a petition to the Works Progress Administration for the supply of the labor necessary in the construction of the system. On July 29, 1935, bids were received for material for the project. On August 6, 1935, contracts were awarded for the purchase of certain material, subject to the approval of the project by the Works Progress Administration. Thereupon this action was brought to restrain further action toward the carrying out of the plan and the expenditure of moneys therefor.

After the adoption of the resolution of January 4, 1935, no notice, setting forth the date of the adoption of the resolution, and containing an abstract of the resolution, concisely stating the purpose and effect, was published, nor was any notice of any kind in respect to the adoption of the plan published, except the notice asking for bids. The trustees did, however, receive a request in writing early in the year 1935 for a referendum, and a protest against the plan

signed by thirty-one taxpayers of the village was read to the trustees at a meeting of the board of trustees, held September 3, 1935.

On these facts we are called upon to determine whether the statutory requirements for the adoption and carrying out of the plan and the issuance of bonds, the expenditure of money and the assuming of obligations were complied with. We must find warrant in the statutes, for municipal corporations are confined in powers to those delegated to them by the State. (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377; *City of Rochester* v. *Bloss*, 185 id. 42, 47.) The only relevant statutes to which our attention has been directed, or which we have found, are the Village Law, especially sections 221, 139, 139-a and 129; and the Mandelbaum Act (so called), section 5-b (Laws of 1933, chap. 782, § 5-a, as added by Laws of 1934, chap. 39, amd. by Laws of 1934, chap. 301, and renum. § 5-b by Laws of 1934, chap. 888).

The defendants cannot predicate power on a compliance with the provisions of the Village Law, nor does it seem that the trustees, in their actions, relied upon the provisions of the Village Law. It has been throughout the claim of the trustees that their action in adopting the plan for the water system in the resolution of January 4, 1935, was not subject to a referendum. Section 221 of the Village Law, however, provides specifically that action under the provisions of that section is subject to a permissive referendum. Further, the village officers did not publish the notice of the adoption of the resolution as required by section 139 of the Village Law, as amended by chapter 48 of the Laws of 1928, which is a prerequisite to the limitation of time for the filing of the petition for a referendum, and it appears, without dispute, from the testimony of the village president that a petition for a referendum was filed early in the year 1935. The provisions of the Village Law were, therefore, not complied with so as to permit the terms of section 221 of the Village Law to serve as a basis for the prosecution of the project.

The other statute to which we are referred is the so-called Mandelbaum Act (Laws of 1933, chap. 782 as amd.). It seems that it was under this act that the trustees were attempting to proceed. Section 5-b of the statute is pertinent and has general reference to public works undertaken by municipalities with financial aid from Federal government agencies or relief authorities of the State. One unsurmountable difficulty here is, however, that the provision for the bonds to be issued by the village of Trenton as provided in the resolution does not conform to the terms of the statute. The resolution provides for the issuance of serial bonds, the maximum period of which is nearly forty years. The installment payments are at

first $500, later $1,000 and still later $2,000 annually. The language of section 5-b of the Mandelbaum Act, as applicable here, is as follows:

" § 5-b. * * * The terms of such bonds shall not exceed the probable life of said improvements or the estimated average probable life of said improvements, and shall mature in annual installments, the first of which shall mature not more than two years from the date of the bonds and the last of which shall mature not more than ten years from the date of the bonds; provided, however, that in the event that the cost, or total cost, as estimated by such governing body or public body, is in excess of two hundred thousand dollars, the last installment of such bonds shall mature not more than twenty years from the date of the bonds, and no installment shall be more than fifty per centum in excess of the amount of the smallest prior installment."

Other provisions of the resolution are claimed by the appellants to be in conflict with the provisions of the Mandelbaum Act, such as the inclusion in the plan of the purchase of real estate and the payment of engineering expenses, both payments to be made out of funds accruing from the sale of the bonds. We need not, however, consider such additional criticisms of the resolution. It is enough for us to determine at this time that the resolution does not conform to the enabling provisions of the act in respect to the term of the bonds.

For these reasons the judgment should be reversed on the law, with costs, and judgment granted in favor of the plaintiffs, enjoining the defendants from further proceedings under the resolution of January 4, 1935, with costs. The order for an extra allowance should also be reversed. Additional findings of fact should be made to the effect (1) that no notice of the adoption of the resolution of January 4, 1935, or of its purpose and effect, was published (see Village Law, § 139, as amd. by Laws of 1928, chap. 48); (2) that a request for a referendum was filed early in the year 1935, and (3) that no referendum was held.

All concur; THOMPSON, J., having been present at the argument of said appeal, but having died on the 7th day of April, 1937, without having taken any part in the determination of this appeal. Present — SEARS, P. J., EDGCOMB, CROSBY and CUNNINGHAM, JJ.

Judgment and order reversed on the law and the facts, with costs, and judgment directed in favor of the plaintiffs and against the defendants for injunctive relief, with costs. New findings of fact made.