In the Matter of JOHN A. BACOM et al., Petitioners, against GRACE A. REAVY et al., Constituting the State Civil Service Commission, et al., Respondents.

Supreme Court, Special Term, Albany County, October 19, 1943.

*Alfred Grey* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (John W. Barnell* of counsel), for respondents.

*Seth T. Cole* for interveners.

FOSTER, J. This is a proceeding under article 78 of the Civil Practice Act to compel the reinstatement of petitioners to positions formerly held by them as motor vehicle license examiners for the Motor Vehicle Bureau of the State Department of Taxation and Finance. Sufficient facts essential to a decision appear to be undisputed.

Petitioners were appointed examiners during the period from February to May in the year 1940, after having qualified for such positions under the State civil service. There is no claim that they had any previous public service.

The interveners, who are designated as incumbents, were transferred from the Transit Commission (Metropolitan Division of the New York State Department of Public Service), where they held positions as transit inspectors or motor vehicle inspectors, to the Department of Taxation and Finance, and appointed to positions as motor vehicle license examiners in that department. These transfers and appointments were made between June 18 and November 4, 1940.

In 1943 the Legislature reduced the appropriation available to compensate motor vehicle license examiners employed in the Department of Taxation and Finance, and consequently it became necessary to suspend some of those who held these positions. Such suspensions were required to be made in the inverse order of original appointments in the State service (Civil Service Law, § 31). Petitioners were suspended and their chief claim in this proceeding is that their suspension was illegal.

It is conceded that petitioners had served longer in the Department of Taxation and Finance than incumbents had, but if the service of incumbents with the Transit Commission may be properly considered as State service, then incumbents had seniority. Petitioners claim that incumbents' previous service

was city service and not State service. City service may not be added to State service for the purpose of computing seniority rights. (*Matter of Canfield* v. *Greene*, 250 App. Div. 181.)

Petitioners rely heavily upon the decision in the *Matter of Horn* v. *Gillespie* (267 N. Y. 333), where claimant's service was held to be city service. The facts in that case indicate that Horn was appointed an axeman in the Board of Water Supply of the City of New York and that he continued in that department until he resigned on January 4, 1914, to accept an appointment the following day as inspector of masonry in the Public Service Commission for the First District. On August 7, 1923, he resigned as an engineering inspector in the Transit Commission, successor to the Public Service Commission for the First District, and received an appointment as assistant engineer in the Board of Water Supply, from which position he was later suspended. The question involved was whether his service *ad interim* with the Public Service Commission of the First District and with the Transit Commission constituted a definitive break in his record of city service. It was held that such service was city service because his duties were concerned exclusively with the construction of rapid transit railroads located within and owned by the city; his salary was paid out of the City treasury; he was authorized to join a City pension system and his service was defined as city service under the New York City Charter (1938).

The situation of incumbents while in the employ of the Transit Commission was closely analogous to that of Horn. Their duties were concerned with transportation wholly within the city of New York; their salaries were paid out of the City treasury; they were authorized to join a City pension system, and their service was defined as city service by paragraph a of subdivision 3 of section B3–1.0 of the Administrative Code of the City of New York (L. 1937, ch. 929). In fact there appears to be no impelling distinction between the two cases. The incumbents' attempt to distinguish their previous service from that of Horn on the basis that he was employed in the construction of rapid transit railroads located within and owned by the city while they were concerned with the application of the Public Service Law to all transportation facilities within the city. The attempted distinction has little force. It was said in the *Horn* case: " It is true that the Public Service Commission for the First District and the Transit Commission exercised functions pertaining to the

State and that their officers have been held not to be city officers (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377, 390, 391), but their duties were limited to the territory included within the city of New York and the legislative enactments in relation to the raising and disbursement of funds as well as the rights and obligations of their employees have established the status of such employees on a plane different from that of regular employees of the State."

This language does not support the distinction sought to be made by incumbents. If it were permissible to construe such language as indicating a twilight zone of service in the former Transit Commission, so that such service might be added to either State or city service, perhaps a just and plausible solution of the problem might be presented. Such, apparently, was the view expressed in the dissenting opinion in the *Canfield* case (250 App. Div. 181, *supra*, Hill, P. J.), but this view was overruled on the basis of legislative intent. I take it, therefore, that the language quoted must be assessed at its face value, and if so there is no room for compromise or refined distinctions. Moreover if the refinements sought to be made by petitioners in attempting to distinguish the *Horn* case are adopted, then the most tortuous reasoning must be applied to all similar cases. Where is the line to be drawn and what facts in one instance place an employee in the former Transit Commission in the State service, and in another instance place him in the city service? While somewhat out of place it may be observed that the fact that incumbents were selected from a State civil service list did not make them State employees. (*Matter of Miller* v. *State*, 279 N. Y. 74.)

I reach the conclusion from the foregoing that the *Horn* case must be regarded as decisive on this issue.

No other issue need be discussed except the claim of laches against petitioners. Respondents have alleged as a defense that the proceeding herein is barred by the Statute of Limitations contained in section 1286 of the Civil Practice Act. This defense is based upon the claim that some of the petitioners knew of incumbents' transfer in 1940 to the Department of Taxation and Finance.

The defense is not tenable. Section 1286 provides in part that the proceeding must be brought " within four months after the determination to be reviewed becomes final and binding, upon the petitioner or the person whom he represents, either in law or in fact, or after the respondent's refusal, upon the demand of the petitioner or the person whom he represents,

to perform his duty, as the case may be  *  *  * ".  Petitioners made a demand which was not refused until May 19, 1943.  This proceeding was commenced not later than July, 1943.  Under the express language of the statute relief to petitioners is not barred.  On the general defense of laches it may be well said that petitioners were under no duty to act until they themselves were directly and vitally affected.  It can hardly be good public policy to require an employee of the State to keep one eye on his work and another constantly cast on administrative transfers to see whether any of his rights may be infringed upon.  Petitioners were not vitally or directly affected until they were actually suspended, and within an appropriate period thereafter they acted.

Petitioners may have an order for the relief requested with fifty dollars costs and disbursements against respondents.