In the Matter of JOHN A. BACOM et al., Respondents, against J. EDWARD CONWAY et al., Constituting the State Civil Service Commission, et al., Appellants, and FRANK GERNERT et al., Interveners, Appellants.

Argued March 5, 1945; decided May 24, 1945.

*Seth T. Cole* for interveners, appellants. I. The service of incumbents with the State Department of Public Service was State service and it was proper to add such service to their service with the State Department of Taxation and Finance in determining their seniority rights under section 31 of the Civil Service Law. (*Matter of Powers* v. *La Guardia*, 292 N. Y. 695; *Matter of McKinney* v. *McGoldrick*, 243 App. Div. 210; *Matter of McAneny* v. *Bd. of Estimate, etc.*, 232 N. Y. 377; *Matter of Collins* v. *Transit Commission*, 267 App. Div. 843; *Matter of Felder* v. *Fullen*, 27 N. Y. S. 2d 699, 263 App. Div. 986, 289

N. Y. 658; *Bateman* v. *Fullen et al.*, 28 N. Y. S. 2d 230; *Matter of Solo* v. *Fullen*, 263 App. Div. 986, 289 N. Y. 660.) II. The transfer of incumbents from the Metropolitan Division of the State Department of Public Service to the Motor Vehicle Bureau of the State Department of Taxation and Finance was legal. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *Matter of Carroll* v. *Murray*, 131 Misc. 577; *Matter of Pruzan* v. *Valentine*, 282 N. Y. 498; *Matter of Marks* v. *Bruckman*, 170 Misc. 709; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of O'Connell* v. *Clark*, 200 App. Div. 606; *People ex rel. Rudd* v. *Cropsey*, 215 N. Y. 451; *Matter of Felder* v. *Fullen*, 27 N. Y. S. 2d 699, 263 App. Div. 986, 289 N. Y. 658; *Matter of Solo* v. *Fullen*, 263 App. Div. 986, 289 N. Y. 660; *Matter of Powers* v. *La Guardia*, 292 N. Y. 695; *Bateman* v. *Fullen et al.*, 28 N. Y. S. 2d 230.)

*Nathaniel L. Goldstein, Attorney-General* (*Herman F. Nehlsen* and *Orrin G. Judd* of counsel), for J. Edward Conway and others, constituting the State Civil Service Commission, and others, appellants. I. The service of the incumbents with the Metropolitan Division of the Department of Public Service is State service and was properly added to their service in the Department of Taxation and Finance in determining their seniority rights under section 31 of the Civil Service Law. (*Gubner* v. *McClellan*, 130 App. Div. 716; *Matter of Bryant*, 152 N. Y. 412; *Matter of Felder* v. *Fullen*, 27 N. Y. Supp. 2d 699, 263 App. Div. 986, 289 N. Y. 658; *Matter of Solo* v. *Fullen*, 263 App. Div. 986, 289 N. Y. 660; *Matter of Collins* v. *Transit Commission*, 267 App. Div. 843; *Matter of Powers* v. *La Guardia*, 292 N. Y. 695.) II. The transfer of the incumbents from the Metropolitan Division of the Department of Public Service to the Motor Vehicle Bureau of the Department of Taxation and Finance was legal. (*Matter of Pruzan* v. *Valentine*, 282 N. Y. 498; *Matter of Marks* v. *Bruckman*, 170 Misc. 709; *Matter of Stracquadanio* v. *Dept. of Health*, 285 N. Y. 93; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 245 U. S. 345; *Matter of Levine* v. *Connelly*, 267 App. Div. 796; *Matter of O'Connell* v. *Clark*, 200 App. Div. 606; *People ex rel. Rudd* v. *Cropsey*, 215 N. Y. 451; *Matter of Hecht* v. *Kern*, 178 Misc. 571; *Matter of DeLack* v.

*Greene,* 170 Misc. 309; *Matter of Weldon* v. *Rheinstein,* 283 N. Y. 753; *Matter of Eagan* v. *Livoti,* 287 N. Y. 464.)

*Bernard Birnbaum* for respondents. I. Petitioners' suspensions were unlawful because petitioners were senior to the interveners. The interveners' Transit Commission service was city service and could not be added to their service with the Motor Vehicle Bureau. (*Matter of Horn* v. *Gillespie,* 267 N. Y. 333; *Matter of McAneny* v. *Bd. of Estimate, etc.,* 232 N. Y. 377; *Matter of McKinney* v. *McGoldrick,* 243 App. Div. 210, 266 N. Y. 632; *Matter of Sanger* v. *Greene,* 269 N. Y. 33; *Matter of Eagan* v. *Livoti,* 287 N. Y. 464; *Matter of Waters* v. *Buck,* 265 App. Div. 344, 290 N. Y. 840.) II. The transfers of the interveners from the Transit Commission to the Motor Vehicle Bureau were contrary to law for two additional reasons: (1) the law does not permit transfers between positions for which the qualifications are essentially different; and (2) the transfers were effected while a list existed for their present positions. (*Matter of Woods* v. *Finegan,* 246 App. Div. 271; *Matter of McNamara* v. *Holling,* 282 N. Y. 109; *Matter of Ryan* v. *Kaplan,* 213 App. Div. 131, 240 N. Y. 690; *Matter of Waters* v. *Buck,* 265 App. Div. 344, 290 N. Y. 840; *Matter of Talbot* v. *Board of Education,* 290 N. Y. 612.)

CONWAY, J. On April 1, 1943, both the petitioners and the interveners were occupying the positions of motor vehicle license examiners in the Motor Vehicle Bureau of the Department of Taxation and Finance. Effective on that day, a number of those positions were abolished and it became necessary to suspend a certain number of employees " in the inverse order of original appointment in the service ", pursuant to the provisions of Civil Service Law, section 31. We must determine whether the petitioners or the interveners have seniority. The interveners held the positions as a result of a transfer from the Transit Commission in 1940. The petitioners were appointed to the positions from a competitive list a few months earlier in the same year. When the positions were abolished, the interveners were retained and the petitioners were suspended. The Appellate Division was of the opinion that our decision in *Matter of Horn* v. *Gillespie* (267 N. Y. 333), was decisive of the issue and restored the petitioners to service. The appeal of the interveners is here by our permission.

The question presented for our consideration is, therefore, whether service with the former Transit Commission (Metropolitan Division of the New York State Department of Public Service) is State or city service. If the interveners, when occupying the positions of transit inspectors, later called transportation service inspectors, in the Transit Commission, were State employees, then they are senior in service to the petitioners. Were they in city service, that could not be added to State service to establish seniority. (*Matter of Eagan* v. *Livoti*, 287 N. Y. 464.)

Historically, the Transit Commission has always been a State agency. When the amendment to article V, section 2, of the New York State Constitution was adopted at the general election in 1925, provision was made for a Department of Public Service. The enabling act, chapter 350 of the Laws of 1926, consolidated into that department the former Public Service Commission and the former Transit Commission. There was then a Department of Public Service with two divisions, viz., a State Division and a Metropolitan Division. The head of the Metropolitan Division was a Transit Commission, consisting of three members appointed by the Governor, by and with the consent of the Senate. They were subject to removal by the Governor for inefficiency, neglect of duty or misconduct in office. The head of the State Division was a Public Service Commission, consisting of five members appointed by the Governor, by and with the consent of the Senate. The chairman of the Commission was designated as such in his appointment and he was both chairman of the Public Service Commission and head of the department. When he acted in such capacity, he was known as the chairman of the Department of Public Service. The appointment or removal of all officers, clerks, inspectors, experts and employees of the department, or any division thereof, were subject to the approval of such chairman.

The jurisdiction of the Transit Commission extended generally, at the period herein involved, to:

(1) Railroads, street railroads and stage or omnibus lines or routes lying exclusively within a city containing a population of over one million inhabitants and to the persons or corporations owning, leasing or operating them;

(2) Similar lines or routes where a portion of the lines or routes were within such city but extended beyond the city to a point within the State (in which case the Public Service Commission had jurisdiction outside the territorial limits of the city);

(3) All omnibuses with a carrying capacity of more than seven persons, operating within the City of New York.

The Department of Public Service, with its State and Metropolitan Divisions, was separate and apart from the Board of Transportation, created by the Legislature in 1924 (L. 1924, ch. 573) for the purpose of constructing New York City subways, to which Board reference will later be made.

The salaries of interveners were determined by the Transit Commission (*Matter of Powers* v. *La Guardia*, 292 N. Y. 695) under Public Service Law, section 13, which provides that employees shall receive the compensation " fixed by the commission ", although they were actually paid by the city in which the commission had jurisdiction, pursuant to section 14.

By Chapter 170 of the Laws of 1943, the Metropolitan Division of the Department of Public Service and the Transit Commission were abolished and their functions transferred to the State Division of the Department of Public Service.

The petitioners place great reliance upon *Matter of Horn* v. *Gillespie* (267 N. Y. 333), but that case should be limited to its facts and indeed has been limited by *Matter of Powers* v. *La Guardia* (292 N. Y. 695), in which we held that employees of the Transit Commission were entitled to annual salary increments as State employees under Civil Service Law, sections 40 and 41. (See, also, *Matter of McAneny* v. *Bd. of Estimate, etc.*, 232 N. Y. 377, 390; *Matter of McKinney* v. *McGoldrick*, 243 App. Div. 210, affd. 266 N. Y. 632, 665.) Both sides urged the *Horn* case upon this court in the *Powers* case, and some of those affected by the decision in the *Powers* case had the same title in their employment (transportation service inspectors) as the interveners here. In the *Horn* case, the petitioner sought to add employment with the Public Service Commission for the First District and its successor, the Transit Commission (first as inspector of masonry and then as engineering inspector) to prior city service. The prior city service was with the Board of Water Supply as axeman. While with the Public Service Commission

for the First District and the Transit Commission, Horn was concerned solely with construction of city subways. The work so done by Horn, and other work upon city owned subways, was within a matter of months after his resignation transferred to the Board of Transportation (a city agency of three commissioners appointed by the Mayor) established by Laws of 1924, chapter 573, which added article 8 to the then Public Service Law. Section 134 of that law contained the statement: " it being the intention of this act to confer on the board of transportation the powers and duties under the Rapid Transit Act to construct or complete the construction of any road or roads remaining to be constructed by the city under any such contract, and to construct or construct and equip any new road or roads and to lease or operate such new road or roads and to retain in the Transit Commission the powers and duties not so transferred." Section 139 provided for eligibility for transfer without examination of employees of the Transit Commission to the Board of Transportation who had been performing service *in respect to subjects transferred to the Board*. That was followed in 1934 (L. 1934, ch. 844) by the further provision that " employees of the transit commission, having prior to the enactment of this article exercised functions and having performed services in respect to subjects or matters, *jurisdiction of which is transferred by this article to the board of transportation,* shall be eligible to have their records of *service* transferred to the municipal civil service commission to be credited as *service rendered* for the city of New York." In other words, if Horn had waited a matter of months, the Legislature would have done for him and others similarly situated, by statute, that which he accomplished by his court proceeding. The record in the *Horn* case discloses that that fact was urged upon us. In fact, in upholding Horn's contention, we pointed out (p. 338) that under the circumstances there outlined " his functions appertain, *except in the strictest possible sense,* to city service." (Emphasis supplied.) Apart from the *Horn* case, it is quite clear that the Legislature was so certain that it had made Transit Commission employees State employees, that it thought it necessary to incorporate section 139 in the Public Service Law in 1924 and to amend it further, as indicated, in 1934. Here, neither petitioners nor interveners were ever connected with any work

transferred to the Board of Transportation. (See, also, *Matter of Felder* v. *Fullen,* 263 App. Div. 986, affd. 289 N. Y. 658.)

The fact that the City of New York paid interveners' salaries is not determinative. The salaries were fixed by the Transit Commission and not by the City. (Public Service Law, §§ 13, 14; *Matter of McKinney* v. *McGoldrick,* 266 N. Y. 632; *Matter of Powers* v. *La Guardia,* 292 N. Y. 695.) They were paid by the City as a matter of State administration. (Public Service Law, § 14, subd. 2.) One may be in State service and yet be paid by a city. For example, Civil Service Law, section 16, provides, in part: " Persons holding positions in the competitive class, having been appointed or promoted thereto after a competitive examination, in the service of a city wholly including within its limits two or more counties, or in the county service or in the *state service where the compensation of such position is paid directly from the treasury of such city,* may be transferred to similar and corresponding positions interchangeably. Such transfer shall be made only with the approval of both the state civil service commission and the municipal civil service commission of such city." (Emphasis supplied.)

Nor is the fact that the interveners are members of the city retirement system determinative. The city retirement system was created to provide " a retirement system for officers and employees whose compensation in whole or in part is payable out of the treasury of the city of New York " (L. 1920, ch. 427). It was not for officers and employees of the city exclusively. On the contrary, section 1700, subdivision 3, of the Greater New York Charter (L. 1901, ch. 466) as amended by that act includes State employees in the following definition: " 3. ' City-Service ' shall mean service, whether appointive or elective, as an official, clerk or employee of the city *or state of New York* * * * so far as such service is paid for by the city of New York * * * " (emphasis supplied). To the same effect are the provisions in the New York Administrative Code, which define city service in dealing with the city retirement system. (Administrative Code, §§ B3–1.0, B3–3.0.) It seems clear that it was convenience of administration of both the city and the State retirement systems which dictated the inclusion of such State employees as interveners in the city retirement system. It was

more logical, as well as more practical, when a State employee received compensation from a city, to have him join the city retirement system and to have the city then make the necessary contribution than to have the city make the necessary salary deduction, and remit such deduction to the State so that the latter might then add its contributions to the State retirement system. The salaries of interveners were " chargeable to the city in which such commission has jurisdiction, * * * " (Public Service Law, § 14) although they were State employees, and thus, quite properly, the contributions to the retirement system into which the interveners were cast, were also to be made by that city.

In the same way, the fact that the interveners were always regarded by the State Civil Service Commission as being in the State service for all of the purposes of the Civil Service Law, including the certification of payrolls, their seniority rights under section 31 of the Civil Service Law, their promotion, transfer, the abolition of their positions under section 16 of the Civil Service Law and the filing of their oaths of office with the Secretary of State under section 30 of the Civil Service Law, cannot be the determinative factor in resolving the question presented. We think that the factors which must finally settle and determine the matter are that the interveners were appointed by the Transit Commission with approval of a State officer, the head of the Department of Public Service, and, subject to applicable constitutional and statutory provisions, could be discharged by like authority. It seems to us that if we follow that as a general rule, it will act as a guide for both public officials and employees. (See *Matter of Goodman* v. *Ralph*, 294 N. Y. 169.)

It is also urged that, even if the service of the interveners with the Transit Commission was State service, their transfers to their present positions as motor vehicle license examiners with the Department of Taxation and Finance was illegal because the qualifications for the two positions were different. There is proof in the record that the transfers were requested in 1940 by the chairman of the Transit Commission and that careful consideration was given to the problem by the Department of Taxation and Finance. The transfers were within the sound discretion of the administrative bodies concerned. (Civil Service

Law, § 16; *Matter of Stracquadanio* v. *Dept. of Health*, 285 N. Y. 93, 96.) The transfers were to equal or lower positions and were permissible although, at the time, there was an open competitive list for the positions to which the interveners were transferred. (Civil Service Law, §§ 14, 16.)

The orders should be reversed and the petition dismissed, without costs.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, DESMOND, THACHER and DYE, JJ., concur.

Orders reversed, etc.