In the Matter of the Application of Cecil C. Colbert and Four Hundred and Ninety Others, Appellants, Respondents, for a Mandamus Order against John H. Delaney, Chairman, Frank X. Sullivan and Charles V. Halley, Jr., Commissioners, Constituting the Board of Transportation, Frank J. Taylor, Comptroller, and The City of New York, Respondents, Appellants.

First Department, December 11, 1936.

*Albert de Roode*, for the petitioners, appellants, respondents.

*Edmund L. Palmieri* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*], for the defendants, respondents, appellants.

O'MALLEY, J. The disposition of these appeals depends upon whether the petitioners' rate of remuneration as employees of the Independent Subway System is subject to fixation by the city of New York, pursuant to the provisions of section 56 of the Greater New York Charter, or is under the control of the board of transportation.

At the outset it is to be observed that the city itself has joined forces with the board of transportation in asserting that full power in the premises is vested in the board. The corporation counsel is appearing in behalf of all defendants.

The Independent Subway System began regular operations September 10, 1932. Since that time there has been a class

of employees with the general title of " Station Agents." They have been of three types, each performing separate duties and each with different requirements and qualifications and rate of remuneration.

In the bureau of audit of the board of transportation there was one group that counted currency and approved the count of money against reports and tally sheets. The members of this group had been receiving $175 per month. To the second group was assigned the duty of collecting funds from the different stations. Its members have been paid at the rate of six dollars per day. These two numbered about thirty-one men. Both groups or grades were designated " collecting."

The petitioners herein are members of a third group of station agents who numbered several hundred. They act chiefly as money changers and are assigned to the various station booths. They had always received fifty to fifty-two cents an hour. They claim here, however, to be entitled to remuneration at the rate of six dollars per day. This claim is predicated upon a resolution of the board of aldermen adopted December 18, 1934.

On November 23, 1934, the board of estimate and apportionment, upon advice from the board of transportation, had recommended to the board of aldermen the establishment of certain positions in the Independent Subway System. That of station agent was not included. Upon a report from the director of the budget, the board of estimate and apportionment on December 14, 1934, passed a resolution " pursuant to the provisions of section 56 of the Greater New York Charter and chapter 637 of the Laws of 1932," recommending to the board of aldermen the establishment of certain positions, which included station agents at $1,800 to $2,100, with unlimited number, and another group, also to be unlimited, at the rate of six dollars per day.

The board of aldermen on December 18, 1934, approved of and concurred in the resolution and fixed the salaries of the positions as set forth therein. The resolutions last referred to were also in compliance with a communication from the board of transportation.

Thereafter, the board of transportation refused to pay these petitioners and others in the same group at the rate of six dollars per day, but continued them at the old rate of from fifty to fifty-two cents per hour. Later, on June 25, 1935, the board of aldermen passed another resolution requesting the board of transportation to comply with the resolution theretofore passed at the rate of six dollars per day.

The petitioners then sought a peremptory order of mandamus to compel the board of transportation to pay them at the rate of six dollars per day. An alternative instead of a peremptory order was granted directing the trial of the issue whether the board of aldermen upon the recommendation of the board of estimate and apportionment intended to fix the salaries of " all " station agents, not on an annual salary basis, at the rate of six dollars per day. This issue came on for trial before a jury and was resolved in favor of the petitioners, but the verdict upon motion was set aside by the trial justice upon the ground, among others, that the evidence did not warrant the finding.

Thereafter the petitioners upon all proceedings theretofore had, moved for a peremptory order of mandamus. The defendants made a cross-motion for a final order vacating the alternative order and dismissing the petition. Both motions were denied. Upon the argument before us counsel stated that neither side desired a further trial of the issue on the alternative order and requested that the matter be decided upon the record here presented. On the argument also the petitioners conceded that if section 56 of the Greater New York Charter did not apply, they were not entitled to the relief sought.

Section 56 of the Greater New York Charter, referred to in the resolutions, provides that the power is vested in and it is the duty of the board of aldermen upon the recommendation of the board of estimate and apportionment to fix the salary of every officer or person whose compensation is paid out of the city treasury, with certain exceptions not here material. Chapter 637 of the Laws of 1932, also referred to in the resolutions, is the so-called Economy Bill, whereby the board of aldermen, upon recommendation of the board of estimate and apportionment, was to have power to fix the salary and reduce the compensation of persons receiving a salary of $2,000 per annum or more.

In our opinion the so-called Economy Bill did not give the board of aldermen the power to increase the salaries of petitioners to six dollars per day. Assuming, without conceding, that in a proper case salaries might be raised as well as lowered under the Economy Bill, it is to be noted that this statute expressly excluded from its provisions those earning $2,000 per annum or less. These petitioners, therefore, were not within its purview.

Nor does section 56 of the Greater New York Charter have application. It is conceded that prior to the enactment of the Economy Bill the board of transportation itself, without interference from the city, filled the positions and fixed the salaries of the employees of the Independent Subway System, even though

they might have been at such times temporary employees. At the time with which we are concerned, the employees to be retained were to be given a civil service status. There had been, therefore, a practical construction of the statutes by the conduct of the parties themselves.

It is true that the board of transportation in carrying on the enterprise of the Independent Subway System is acting as the city's agent. (*Matter of Rapid Transit Railroad Commissioners*, 197 N. Y. 81.) Ordinarily, of course, the principal controls the agent. But under the authorities the board of transportation, successor to all the powers with which its predecessors under various statutes were vested, constitutes a State instrumentality in transit matters — a State function. (*Litchfield Const. Co.* v. *City of New York*, 244 N. Y. 251, 263; *Matter of McAneny* v. *Board of Estimate, etc.*, 232 id. 377; *McGovern* v. *City of New York*, 185 App. Div. 609.) So here, it seems to us, that the board of transportation is carrying on a State function, though acting as the agent of the city.

Section 45 of the Greater New York Charter, moreover, provides that " Nothing in this act contained shall repeal or affect in any manner the provisions of the rapid transit acts applicable to the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, or any municipality united therewith or territory embraced therein." It may not be argued that because section 56 was enacted subsequent to section 45 of the Greater New York Charter, the latter was thereby repealed. Certainly section 56 contains no express provision for repeal, and the presumption, therefore, is that none was intended. (*People ex rel. Kingsland* v. *Palmer*, 52 N. Y. 83; *Grimmer* v. *Tenement House Department*, 204 id. 370, 378.) Moreover, section 56 is a general law, while section 45 is a special law. A general law does not repeal a special law by implication, unless the intention so to do is clear. (*Grimmer* v. *Tenement House Department, supra; Welch* v. *City of Niagara Falls*, 210 App. Div. 170.) The two sections may be read together and so both should stand. (*Woods* v. *Board of Supervisors*, 136 N. Y. 403; *Davis* v. *Supreme Lodge, Knights of Honor*, 165 id. 159, 166, 167.)

Furthermore, section 56 of the Greater New York Charter relates only to those whose salary or compensation " is paid out of the city treasury." It is to be noted that under the provisions of section 136, subdivision 3, of the Public Service Law, the revenue derived from the municipal operation of any railroad is to be kept in a separate account in the name of the city in a bank to be designated by the board of transportation (not the city) and is to be

" held separate and apart from all other funds of the city." Operating expenses, which include salary and wages, are paid out of this special fund. (§ 136, subd. 4, ¶ [a].) The income of the Independent Subway System, therefore, does not in a true sense go into the city treasury; nor are the salary and wages of the employees of the system paid therefrom.

True, it has been held with respect to section 56 that there is "no such precise thing as 'the city treasury,' but this term is used to describe the money that is raised, received and expended by the municipal corporation." (*Farrell* v. *Board of Education*, 113 App. Div. 405, 407.) However, in the case before us moneys arising from the operation of the Independent Subway System are not moneys " raised " and received and expended by the city in the ordinary sense and do not become part of the general funds of the city.

It is further to be noted that in the communications to the board of estimate and apportionment the board of transportation did not refer at any time to the provisions of section 56 of the Greater New York Charter, but only to chapter 637 of the Laws of 1932. The board of transportation, therefore, considered application to the board of estimate and apportionment necessary merely because of the provisions of the Economy Bill. It is true that the resolutions of the board of estimate and apportionment and of the board of aldermen referred not only to the provisions of chapter 637 of the Laws of 1932, but also to section 56 of the Greater New York Charter. That reference alone could not confer power where otherwise it did not exist. Authority is not so easily usurped.

Moreover, the minutes and resolution of the board of estimate showed that several titles had been inadvertently omitted by the board of transportation when it at first submitted a list of proposed permanent positions affecting fifty-one employees. This limited resolution it seems to us could not have been intended to cover these petitioners, who then numbered several hundred. It could only refer to those station agents designated as (Collecting) and who comprised the first two groups above mentioned to the number of about thirty-one men, in addition to several other positions which likewise had been omitted from the first communication.

While the petitioners, particularly with respect to the Civil Service Law and the right to join the city pension system, may be regarded as city employees, and their service defined as city service (*Matter of Horn* v. *Gillespie*, 267 N. Y. 333), the case cited is not determinative of the question here presented of the authority to fix salaries.

So, too, with respect to *Pitt* v. *Board of Education* (216 N. Y. 304) and *Hogan* v. *Board of Education* (137 App. Div. 255; affd., 200 N. Y. 370), where it was held that the compensation of certain employees of the department of education was subject to regulation by the city under section 56. Those cases seem to proceed upon the theory that since section 56 specifically excluded from its operation " teachers, examiners and members of the supervising staff of the department of education," there was a reservation by implication of the right to fix the compensation of others rendering service in the department of education. Section 56, *supra,* contains no specific mention of persons rendering service for or on behalf of the board of transportation or its predecessors.

The whole scheme of the Public Service Law and its predecessor statutes is to give to the board of transportation the greatest possible freedom from interference on the part of the city. This general scheme would be subverted if the board of transportation did not have authority to fix the salaries to be paid, as well as to regulate the duties, hours of service, etc., of the employees of the system.

It is true that under sections 13 and 14 of the Public Service Law the power of the transit commission may be said to be greater than that given the board of transportation under section 133, with respect to the obligation of the city to appropriate such funds as might be requisitioned. The transit commission upon refusal of the board of estimate and apportionment might obtain what would be in effect a mandamus order compelling it so to do. (*Matter of McAneny* v. *Board of Estimate, etc.,* 232 N. Y. 377.) The requisition made by the board of transportation under section 133 is, however, subject to audit, in that the board of estimate and apportionment may appropriate such part thereof as it may deem necessary for the payment of salaries and expenses. Likewise, after such appropriation shall have been made, the comptroller is again permitted " to audit " the vouchers presented for the said salaries and expenses.

The power to audit under section 133, such as is vested in the board of estimate and apportionment and the comptroller, has been defined as follows: " To audit is to hear, to examine an account, and in its broader sense it includes its adjustment or allowance, disallowance or rejection." (*People ex rel. Myers* v. *Barnes,* 114 N. Y. 317, 323.)

The body or official with the authority to audit may not act arbitrarily or capriciously. The act is a quasi judicial one, but, nevertheless, subject to judicial review by certiorari. (*People ex rel. McCabe* v. *Matthies,* 179 N. Y. 242.)

Surely it could not be seriously urged that where the board of transportation in good faith and on a proper showing requisitioned a substantial fund, the board of estimate and apportionment might appropriate but a nominal sum. The power to audit, unlike the power to tax, is not the power to destroy. Proper actions of the board of transportation may not be prevented or nullified in any such manner by the board of estimate and apportionment. The sum or sums to be appropriated are lump sums. (*Matter of McKinney* v. *McGoldrick*, 243 App. Div. 210. 213; affd., 266 N. Y. 632; reargument denied, Id. 665.)

Furthermore, the last sentence of section 133 provides: " In case of municipal operation *all* salaries and expenses incurred in connection with such operation shall be included in the expense of operation." (Italics ours.) A distinction is made in this very section between general salaries of the board of transportation and expenses incurred in connection with the operation of the Independent Subway System.

Under section 136 of the Public Service Law the operating expenses, exclusive of maintenance, but " including all expenses for personal services," are a primary charge upon the operating fund to be derived " from all sources of income " of the Independent Subway System. In the operation of any such municipally-owned system it might reasonably be inferred that the revenues therefrom would at least be sufficient to pay operating expenses including those for personal service.

Under such circumstances the salaries, wages and compensation of the city employees engaged in the operation of the municipal system might be met without recourse to any appropriation by the board of estimate and apportionment under section 133. That the personal service expenses of the Independent Subway System are to be so met is further evidenced by the provisions of section 135 of the Public Service Law, which provides that if the revenue should prove inadequate during the initial sixth year to meet not only operating, but all other obligations, the board of transportation is authorized to adjust, fix and readjust the five-cent fare so as to produce a sufficient annual income therefor.

Under section 130 of the Public Service Law the board of estimate and apportionment is given the power to fix the salaries of the members of the board of transportation. Nowhere, particularly in section 133, is the power expressly given the board of estimate and apportionment to fix the salaries of others. In *Pitt* v. *Board of Education* and *Hogan* v. *Board of Education* (*supra*) section 56 of the Greater New York Charter was held to be applicable by implication to certain other employees of the board of education,

for the reason that it specifically excepts from its operation teachers, examiners and members of the supervising staff. Since section 130 of the Public Service Law grants authority to the board of estimate and apportionment to fix salaries merely of the members of the board of transportation, it is a fair argument that it was thereby intended that such power should not exist with respect to its employees.

The record does not disclose nor is it contended that since the enactment of section 130 in 1924, the board of estimate and apportionment has ever claimed the right to fix the salary of the employees of the board of transportation.

We are of opinion, therefore, that in the present circumstances the board of transportation, while acting as the agent of the city in the operation of the Independent Subway System, still is performing a State function and is to be regarded as a separate autonomous body. The board of transportation should be so regarded when operating as well as when constructing subways for the city. This control of salaries and wages is subject perhaps to the application in a proper case of the provisions of the so-called Economy Bill. (But see *Matter of McKinney* v. *McGoldrick, supra.*)

It follows, therefore, that the order denying the petitioners' motion for a peremptory order of mandamus should be affirmed, the order denying the motion of the defendants for a final order vacating the alternative order and dismissing the petition reversed, and said motion granted, and the order entered on or about March 11, 1936, in so far as it grants defendants' motion to set aside the verdict of the jury in favor of petitioners affirmed, without costs. The appeal from so much of said order entered on or about March 11, 1936, as denies a motion for a directed verdict on behalf of defendants should be dismissed.

MARTIN, P. J., and UNTERMYER, J., concur; DORE, J., dissents.

DORE, J. (dissenting). I agree with the majority opinion that the Economy Bill (Laws of 1932, chap. 637) did not give the board of aldermen the power to increase the salaries of these petitioners. I am constrained to dissent, however, on the conclusion reached that the remuneration of these petitioners as employees of the Independent Subway System is under the independent control of the board of transportation and is not subject to fixation by the city of New York acting through its board of estimate and board of aldermen.

It is conceded that the board of transportation in conducting the operation of the Independent Subway System is acting as the city's agent and that ordinarily the principal controls the agent,

but the majority holds that the board of transportation as successor to all the powers with which its predecessors under various statutes were vested, constitutes a State instrumentality, and is, therefore, carrying on a State function, though simultaneously acting as the agent of the city. Though the board of transportation is the successor to the transit commission created in 1921, which took over the duties of the transit construction commissioner created under the Laws of 1919, formerly a part of the Public Service Commission of the First District, a body appointed pursuant to the Laws of 1907, it is demonstrably not the fact that in the sole issue here presented for adjudication, namely, the power to fix salaries and expenses, the present board of transportation is successor " to all the powers with which its predecessors under various statutes were vested." Under section 13 of the Public Service Law the power given by the Legislature to the old transit commission to fix salaries of its employees was given in the following language: " All officers, clerks, inspectors, experts and employees of a commission, and all persons appointed by the counsel to a commission, shall receive the compensation fixed by the commission, which, if to be paid by the State shall be within the amounts appropriated therefor by the Legislature."

Under section 14 of the Public Service Law, subdivision 2, it was further provided: " The salaries of the commissioners, secretary and counsel of the transit commission shall be paid monthly from the State treasury upon the audit and warrant of the Comptroller out of the funds provided therefor. All other salaries and expenses of the transit commission shall be chargeable to the city in which such commission has jurisdiction, and shall be audited and paid as follows: The board of estimate and apportionment * * * shall, from time to time, on requisition duly made by the transit commission, appropriate such sum or sums of money *as such commission shall certify* to be necessary to properly enable *it* to do and perform, or cause to be done and performed, the duties imposed upon it. Such appropriation shall be made forthwith upon presentation of such a requisition *without revision or reduction and without the imposition of any conditions or limitations by such board* or body, *and such appropriation by it is hereby declared to be a ministerial act.*" (Italics mine.)

It further provided that if the board of estimate failed to appropriate such amount as the transit commission deemed necessary the commission might apply to the Appellate Division of the Supreme Court in the First Judicial Department for an order " requiring such board or body to make such appropriation."

The present board of transportation was created by article VIII of the Public Service Law (added by the Laws of 1924) and the provisions with regard to the payment of salaries and expenses give no such authority to the board of transportation as was given in clear and unmistakable terms to the former transit commission. So far as relevant, section 133 of the Public Service Law, enacted in 1924 under the title "Payment of salaries and expenses," provides that the salaries of the members of the board of transportation and the salaries and expenses incurred in the exercise of its powers and duties shall be chargeable to the city and audited and paid as follows: "The board of estimate and apportionment * * * shall, on requisition duly made by the board [of transportation], stating the purposes for which such moneys are required, appropriate such sum or sums of money *as the board of estimate and apportionment * * * may deem necessary* for the payment of such salaries and expenses." (Italics mine.)

The omission from the act creating the board of transportation of the language in the Public Service Law with regard to the power to fix and determine salaries and expenses could not have been inadvertent; it was intentional and it necessarily indicates a very different and much more limited grant of power to the board of transportation. Nor is the language used an indication that the board of estimate is merely to fix a single total and the board of transportation to disburse such total as it may determine. The language connotes an opposite intention; it refers to "such sum or *sums*" as the board of estimate "may deem necessary for the payment of such *salaries* and *expenses*."

Under section 56 of the charter, power is vested in and it is the duty of the board of aldermen, upon the recommendation of the board of estimate, to fix the salary of every officer or person whose compensation is paid out of the city treasury, with exceptions that are not here relevant, and this the board of aldermen has fixed at six dollars a day in the case of these petitioners, not by one resolution, but by several.

It is claimed that section 56 relates only to those whose compensation is paid out of "the city treasury" and that under the provisions of section 136, subdivision 3, of the Public Service Law the revenue derived from municipal operation of the Independent Subway System is held separate and apart from all other funds of the city; that the operating expenses are paid out of this special fund; and that accordingly the payments are not from the city treasury. But by referring to "*other* funds of the city" that very section designates these funds as city funds and, therefore, they should be deemed to be part of the city's treasury. In addition

it may be pointed out that under section 133 of the Public Service Law the salaries of the members of the board of transportation and the salaries and expenses paid or incurred in the exercise of their powers are " chargeable " to the city. The liability for payment is the city's liability, and it is absolute and not dependent on the amount in the separate fund. Section 136, stating how the receipts shall be deposited, is merely a provision for purpose of administration; it in no way lessens the primary liability of the city for such operating expenses and salaries.

It is alleged that there has been a practical construction of the statutes by the conduct of the parties in that the board of transportation without interference from the city filled the positions and fixed the salaries of the employees at the time they were temporary employees. The Independent Subway System started operation on September 10, 1932, and the record shows that the salary of these temporary employees was approved on January 20, 1933, by the board of estimate and adopted by the board of aldermen on January 24, 1933, and later approved by the mayor. Thus from its inception the board of transportation has never fixed the salaries of these employees without the approval of the city.

The operation of the municipal subway is clearly not a governmental function, but a proprietary function. Although section 45 of the charter was last amended in 1907 and section 56 was amended* under the City Home Rule Law of 1924, section 56, as amended, does not repeal by implication section 45. But the Legislature in enacting in 1924 article VIII of the present Public Service Law, establishing the present board of transportation and defining its powers and duties, has determined under section 133 of that act by whom the salaries of the employees should be fixed, and has intrusted such power not to the independent action of the board of transportation but to the board of estimate, whose recommendation under the provisions of section 56 is subject to approval by the board of aldermen.

The recital of the wrong statutory authority in the resolution of December 14, 1934, does not make the action void if there was authority in law, as I believe there was under section 133 of the Public Service Law and section 56 of the charter.

Whether the resolution of the board of estimate on December 14, 1934, concurred in by the board of aldermen on December 18, 1934, was intended to cover only the station agents of the so-called collecting classes and not the station agents who are referred to as " money changers " was a question of fact. It was the main issue presented

---

* See New York City Local Laws of 1925, No. 1.— [REP.

to the jury on the alternative order, and the jury found on that issue of fact for the petitioners. In my opinion the verdict should not have been set aside as it was sufficiently supported by the evidence.

The wisdom of committing to the board of transportation the greatest possible freedom from interference on the part of the city in the exercise of its extremely important and onerous responsibility of operating the Independent Subway System is a matter for the Legislature and not the courts. Further, if the board of transportation can show the board of estimate that these petitioners should not in the future receive six dollars a day but only fifty to fifty-two cents an hour, the board of transportation can make requisition for such salaries to the board of estimate and on the approval of such board reduce any of the salaries of these station agents to such rate per hour as may be deemed to be reasonable and proper.

Accordingly, I dissent and recommend that this court (1) reverse the order of the trial judge setting aside the verdict of the jury and ordering a new trial; (2) reinstate the verdict of the jury in favor of the petitioners, and (3) reverse the order denying the motion for a final peremptory order of mandamus, and grant such motion with costs.

Order denying petitioners' motion for a peremptory order of mandamus affirmed, the order denying the motion of the defendants for a final order vacating the alternative order and dismissing the petition reversed, and said motion granted, and the order entered on or about March 11, 1936, in so far as it grants defendants' motion to set aside the verdict of the jury in favor of petitioners affirmed, without costs. The appeal from so much of said order entered on or about March 11, 1936, as denies a motion for a directed verdict on behalf of defendants dismissed.