PETER REISS CONSTRUCTION Co., INC., Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, Kings County, July 10, 1944.

*M. Carl Levine* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Charles Blandy, John W. MacLeod, Robert F. Wilson* and *Jacob Robinsohn* of counsel), for defendant.

WALSH, J. These are cross motions for summary judgment in an action to recover $60,000 for breach of contract. Most of the pertinent and essential facts vital to a decision are undisputed. Consequently, there remains for the court the determination of the legal questions involved.

The facts out of which the alleged cause of action arises may be stated as follows:

Prior to June 3, 1932, the City of New York, acting through the Board of Transportation, duly advertised for bids for the construction of the station finish for a part of the Independent, city-owned rapid transit railroad system, Route No. 107, sections 5 and 6, and Route No. 110, section 1. The proposed invitation to contractors to bid provided, in part: " The receipt of bids will be subject to the requirements specified in said Information for Contractors."

The Information for Contractors provided, in part, as follows: " Bidders are informed that the award of the contract by this Board shall be of no binding effect until the Board shall be authorized to execute the same in compliance with the provision of Section 36 of the Rapid Transit Act which is as follows: ' All such contracts must before execution be approved as to form by the Corporation Counsel, or other chief legal adviser of such city and consented to by the Board of Estimate and Apportionment of such city.' "

On June 3, 1932, eight concerns submitted bids and the plaintiff's was the lowest. Conforming to the usual practice, plaintiff submitted a financial statement and soon thereafter was adjudged qualified to perform the work by the Board of Transportation, which by its resolution of June 14, 1932, awarded the contract to plaintiff '' subject to its being approved and consented to in form and substance as required by law.'' A certified check for $10,000 was deposited by the plaintiff with its bid, which check was never cashed but was returned to the plaintiff on or about June 12, 1934. The Board of Transportation forwarded plaintiff's bid and proposed contract to the Board of Estimate and Apportionment in a letter dated June 14, 1932, stating:

'' This Board finds Peter Reiss Construction Co. Inc., is financially able to undertake the proposed contract, and has awarded the proposed contract to Peter Reiss Construction Co. Inc., *subject to its being approved and consented to in form and substance, as required by law.*

'' Your Honorable Board is, therefore, requested to consent to said proposed contract and to prescribe a limit to the amount of bonds available to meet the requirements of said proposed contract, to wit, the sum of Three hundred seventy-two thousand five hundred dollars ($372,500.), and also to direct the Comptroller of the City of New York to issue bonds of said City at such a rate of interest as the Commissioners of the Sinking Fund may prescribe for the purpose of providing the necessary means for meeting the City's obligations under said *proposed contract,* to wit, the sum of Three hundred seventy-two thousand five hundred dollars ($372,500.)

'' Your Board is also requested to authorize, pursuant to Section 45 of the Greater New York Charter, the issuance of corporate stock for the full amount necessary to meet the estimated expense to the City of carrying out said *proposed contract.''* (Italics supplied.)

A month later the matter appeared on the calendar of the Board of Estimate and it was referred to the Committee of the Whole for consideration. That Committee recommended approval and the matter again appeared on the calendar of the Board of Estimate on October 14, 1932, but was laid over for two weeks.

Nothing further was done until December 12, 1932, when the Board of Transportation in a letter to the Board of Estimate again requested approval of the contract and the necessary appropriation and called attention to the long delay in putting

the subway into operation. Approval of this proposed contract, together with a number of others totaling in all $10,000,000, was necessary before the subway construction could be completed and the system put in operation.

At the meeting held December 29, 1932, the Board of Estimate, on motion of the Comptroller, referred the matter to the Comptroller for report.

On April 4, 1934, before any report was rendered by the Comptroller, the Board of Transportation by resolution withdrew from the Board of Estimate its previous request for approval of the proposed contract and necessary appropriation. On the same day the Board of Transportation, by letter to the Board of Estimate, withdrew the proposed contract from the latter's consideration, and on April 12, 1934, notified plaintiff that its certified check submitted with the bid would be returned upon presentation of the receipt given for it. On June 11, 1934, plaintiff addressed the following letter to the defendant:

'' It is obviously useless to continue our certified check for $10,000 as a deposit in connection with contract for Route 107, Sections 5 and 6, and Route 110, Section 1, but we feel that an injustice is being done to us, and in taking the check, we reserve whatever rights we have.

'' Kindly give the check to bearer who will return the receipt.'' Thereafter the defendant turned over the aforesaid deposit of $10,000 to the plaintiff, who accepted it without prejudice to any of its rights.

Plaintiff contends that the Board of Transportation did not have any right to prevent the Board of Estimate from determining whether to consent to the award previously made to the plaintiff or to reject it; and further, that once the Board of Transportation had accepted a low bid and passed a resolution stating that it was for the best interests of the City to accept the bid and transmitted the same to the Board of Estimate for approval, a contract arose unless for good cause shown the Board of Estimate refused its approval.

The defendant contends that no contract existed between the parties and no contract was executed.

The second point of plaintiff, that a contract arose, shall be considered first.

Even if the Board of Transportation had the power to make a contract, in this instance it did not make a contract. One of the conditions of the acceptance of a bid and the award of a contract was that *it would be of no binding effect until the Board of Transportation had been authorized to execute a contract*

after the contract had been approved as to form by the Corporation Counsel and the Board of Transportation had received the consent of the Board of Estimate and Apportionment. It is undisputed that the Board of Estimate never consented to the contract. A condition precedent had not been fulfilled.

However, it is clear from the statutes that in 1932 the Board of Transportation did not have the power to make a contract without the consent of the Board of Estimate and Apportionment.

An analysis of the statutory provisions with respect to the historical development of the powers and duties of the Board of Transportation will help to clarify the issues which are presented here for determination. The powers of the present Board of Transportation were originally vested in the Board of Rapid Transit Railroad Commissioners by chapter 4 of the Laws of 1891. They were transferred to the Public Service Commission of the First District by chapter 429 of the Laws of 1907, then to one Transit Construction Commissioner by chapter 520 of the Laws of 1919, then to three Transit Commissioners by chapter 134 of the Laws of 1921, and finally to the Board of Transportation by chapter 573 of the Laws of 1924. Under section 10 of chapter 4 of the Laws of 1891, it was mandatory upon the City to appropriate such sums as might be requisitioned by the Board of Rapid Transit Railroad Commissioners to perform its functions. In the event of the failure of the Board of Estimate so to do, the Board of Rapid Transit Railroad Commissioners could apply to the General Term of the Supreme Court, on notice, to determine what amount should be appropriated, and the decision of the General Term was to be final and conclusive.

All the amendments enacted between 1891 and 1932 need not be considered. Limitations were placed upon expenditures for rapid transit construction. In 1904 these limitations were removed and there was enacted a provision which became section 37 of the Rapid Transit Act and which is now a part of section 34 of the Rapid Transit Law. Considering this particular amendment (L. 1904, ch. 562), Mr. Justice SHEARN in a concurring opinion in *McGovern* v. *City of New York* (185 App. Div. 609, 624), quoting from his own opinion in *People ex rel. Holbrook* v. *Mitchell* (N. Y. L. J., August 24, 1915, p. 1802, col. 1) stated: " The purpose of the legislation of 1904 was plainly to transfer from the Legislature to the city authorities the right to fix the limit of rapid transit expenditures, and it was for this purpose that provision was made for the prescribing of a limit

of expenditures by the city authorities and for the obtaining of the consent of the city authorities before any construction contract should be entered into. There is no indication anywhere in the act that there was an intention on the part of the Legislature to transfer to the board of estimate and apportionment any of the powers lodged in the rapid transit board, but on the contrary the Legislature indicates a plain intention to shift from the Legislature to the city the responsibility to determine to what extent the city should be committed financially for rapid transit improvement, while at the same time leaving the planning and managing of the work undisturbed in the rapid transit board.''

By chapter 540 of the Laws of 1913, subdivision 2 of section 37, (still in effect in 1932), was made to read as follows: '' 2. The amount of bonds authorized to be issued and sold by this section shall not exceed the limit of amount which shall be prescribed by the board of estimate and apportionment or such other local authority having power to make appropriations of moneys to be raised by taxation; *and no contract for the construction of such road or roads shall be made unless and until such board of estimate and apportionment or such other local authority shall have consented thereto and prescribed a limit to the amount of bonds available for the purposes of this section which shall be sufficient to meet the requirements of such contract* in addition to all obligations theretofore incurred and to be satisfied from such bonds.'' (Italics supplied.)

The substance of the 1891 law and this same provision, slightly changed in wording, are now found in subdivision b of the present section 34 of the Rapid Transit Law.

The powers and duties of the Board of Transportation are, as prescribed by section 134 of the Public Service Law, determined by the original 1891 law and the acts amendatory thereto, which, of course, in 1932 included the above-quoted subdivision 2 of section 37.

In considering the legislative scheme as exemplified by various provisions enumerated above and others examined by the court, it is clear that it was the intention of the Legislature to make it mandatory upon the City to appropriate such funds as might be requisitioned by the Board of Transportation and its predecessors for the payment of salaries and operating expenses. (*Matter of McAneny* v. *Bd. of Estimate, etc.,* 232 N. Y. 377; *Matter of Colbert* v. *Delaney,* 249 App. Div. 209, affd. 273 N. Y. 626.) It is also quite apparent that this is not true with respect to funds that would be required for the construction of roads,

subways, tunnels, etc., in view of the fact that subdivision 2 of section 37 provides that such contracts must be specifically approved by the Board of Estimate. This view finds support in the opinion of the court in *Union Real Estate Co.* v. *City of New York* (183 App. Div. 417). There the court held that the Public Service Commission had no power to bind the City to build an express station without the express consent of the Board of Estimate inasmuch as the building of the station involved the appropriation and expenditure of money. Significantly, the court stated (pp. 419–420): " Counsel for the plaintiffs, however, misapprehends the significance of this consent, for he does not give any effect to the provisions in subdivision 2 of section 37 of the Rapid Transit Act (Laws of 1891, chap. 4, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498, and Laws of 1913, chap. 540), which require that every contract for the actual doing of the work under any of the general contracts or under the general plan for the dual system of subways must be specifically approved by the board of estimate and a special provision made for the expense thereof by a particular limitation of bonds available for the work. No claim is made, or could reasonably be made, that the mere approval of contract No. 3 with the station plans annexed deprived the Public Service Commission and the city of the right to change the plans by relocating the stations or providing for other or different stations. Plaintiffs claim, however, that the change could not be made in view of the contract between the parties. The contract was negotiated between the plaintiffs and the Public Service Commission. To sustain plaintiffs' position would be to accord to the Public Service Commission far greater powers than the Rapid Transit Act provides or contemplates. No contract to build an express station or any other kind of a station could be let without the consent of the board of estimate and apportionment and a limitation by it of bonds for the purpose of defraying the expense. * * * No power exists in the courts to compel the board of estimate and apportionment to appropriate money for a subway station which does not meet its approval. There was no contract for an express station between the plaintiffs and the city and there is, therefore, no valid contract for one which can be specifically enforced."

In the absence of any approval or consent by the Board of Estimate to the proposed award to the plaintiff herein, a contract did not arise and no binding contract was executed between the plaintiff and the defendant City.

In *Smith* against *The Mayor, &c., of New-York* (10 N. Y. 504), the street commissioner had advertised for bids to pave 22d Street, and plaintiff had submitted the lowest bid. Although the plaintiff there alleged that the contract was duly awarded to the plaintiff, it was established that the City had not made any appropriation for the proposed work. After citing the statute requiring an appropriation by the common council of that day, the court dismissed the complaint, and stated (p. 508):

" Until the final action by the corporation, the proceeding is incomplete, and liable to be defeated by the refusal of that body to proceed further.

" I know of no law, which will subject the defendants to damages, for declining to accept the offer." (P. 507.)

So, also, in *Molloy* v. *City of New Rochelle* (198 N. Y. 402), where the bid of the lowest bidder was rejected and the contract awarded to the highest bidder, plaintiff sued, as here, for loss of profits. It was held that no contract relationship could arise merely from a bid, unless from the terms of the statutes and the advertisement, a bid in pursuance thereof is, as a matter of law, an acceptance of an offer, wholly apart from any action on the part of the municipality or any of its officers.

One of the cases upon which the plaintiff strongly relies to sustain his position is *Matter of McAneny* v. *Board of Estimate, etc.* (232 N. Y. 377, *supra*). There the court held that it was the duty of the Board of Estimate upon receiving requisitions from the Transit Commission, to make appropriations requested by that body to enable it to perform its functions and where the Board of Estimate refused to do so the Commission was authorized to apply to the court for what in effect was a peremptory mandamus to compel performance. The court based its decision on this aspect of the case upon the provisions of subdivision 2 of section 14 of chapter 134 of the Laws of 1921, but pointed out, however, that the Commission was not authorized to make any new contract for the construction, equipment, maintenance or operation of the railroads without the approval or consent of the local authority where such new contract or modification required the authorization by the local authority of *corporate stocks or bonds*. The court said (p. 389): " The commission is not authorized to make any new contract or modify any contract for the construction, equipment, maintenance or operation of the railroads, or any of them, without the approval or consent of the local authority, where such new contract or modification of an existing contract requires to carry it out the authorization by the local authority of corporate stock or bonds

of the city in addition to the corporate stock or bonds required to carry out such existing contract, or would result in replacing within the debt limit of the city under the Constitution of the state, corporate stock or bonds which have been excluded therefrom under orders of the Appellate Division of the Supreme Court, or where such contract or modification of an existing contract adopts or so modifies a route or routes and general plan of a railroad as to require consents therefor under section eighteen of article three of the Constitution of the state. (Sec. 109.) "

So, too, in the case of *Matter of Colbert* v. *Delaney* (249 App. Div. 209, affd. 273 N. Y. 626, *supra*), relied upon by plaintiff, the court held that the remuneration of petitioners as employees of the Independent Subway System was under the independent control of the Board of Transportation and was not subject to fixation by the City of New York acting through its Board of Estimate and Board of Aldermen. There the court was called upon to construe the effect of section 133 of the Public Service Law having to do with the payment of salaries and the expenses of the Board of Transportation. Both this case and *Matter of McAneny* v. *Board of Estimate, etc.* (*supra*) substantiate the view expressed above as to the mandatory character of the provisions with respect to the payment of salaries and expenses of the Board of Transportation and its predecessors. They do not support, however, the plaintiff's contention that section 37 in no wise limits the right of the Board of Transportation to make contracts on its own behalf for the construction of stations, roads, tunnels, etc.

The other case of *McGovern* v. *City of New York* (185 App. Div. 609, *supra*), which plaintiff asserts supports its contentions, is readily distinguishable from the one at bar. There the Board of Estimate and Apportionment had already approved and consented to the execution of the contract with the plaintiff McGovern (p. 615) but there was a deficiency in the amount of the appropriation necessary to complete the payment for work. The court held, and quite properly so, that the liability of the City was not limited by the amount for which the issuance of bonds had been authorized. Also, as hereinabove indicated, this case shows clearly the necessity for the consent of the Board of Estimate.

The court now refers to the first point made by the plaintiff that the Board of Transportation had no right to withdraw the proposed contract from the consideration of the Board of Estimate. It is evident that the plaintiff wanted the contract and the Board of Transportation wanted the plaintiff to have it.

Although plaintiff indicated that it would waive the forty-five days' limitation in the contract, it would not leave the $10,000 on deposit for as long as a year, but was willing to leave it for a reasonable time, presumably some period less than a year. Plaintiff could have withdrawn the bid and the deposit after the lapse of a reasonable time. It did not choose to do so. The Board of Transportation not only made the original request to the Board of Estimate for approval but six months later made a second request. More than a year elapsed after the second request and the Board of Estimate had not given the necessary consent to the contract. Undoubtedly, plaintiff knew the involved financial situation of the City but hoped for improvement. The matter might have been disposed of by a formal rejection by the Board of Estimate, but the lapse of time and the inability of the City to furnish the necessary money for this and the other contracts to finish the subway were practically a passive rejection. To sustain the contention of the plaintiff, it would be necessary to find some duty on the part of the Board of Transportation to force the Board of Estimate to act and meanwhile forego the opportunity to use the new source of money. Such a duty has not been shown. It did not exist. Defendant and the Board of Transportation owed to the plaintiff the duty of good faith. While the situation that developed was unfortunate for plaintiff, it appears it was beyond the control of the defendant. In any event, plaintiff is suing for breach of contract, not for failure to make a contract.

In the light of the foregoing, it is the opinion of this court that no binding contract was entered into by the plaintiff and the defendant City, and that consequently plaintiff has no cause of action for its breach.

Defendant's cross motion for summary judgment is granted and plaintiff's motion is denied, without costs.