Callahan, J.
The plaintiff as a taxpayer brings this action to restrain the administrative officials of the City of New York and its Board of Transportation from the issuance and sale of budget notes to meet a deficiency arising from the. operation of the municipally-owned subway system. On the plaintiff’s motion for an injunction pendente lite it was stipulated that the application might be treated as a motion for summary judgment by all parties. The motion for a temporary injunction was denied, and the complaint dismissed on motion by the defendants for summary judgment in their favor pursuant to the stipulation aforesaid. The plaintiff appeals from the order denying injunctive relief and dismissing the complaint and from the judgment entered thereon.'
In January, 1946, the subway employees submitted a demand for a general increase in wages. After a conference with representatives of a large number of such employees, the Mayor of the City of New York on February 26, 1946, appointed a committee known as the Mayor’s Advisory Transit Committee to investigate and report on the matter of wages and labor relations. There were extended hearings and discussions with the subway employees or their representatives. On September 9, 1946, the Advisory Committee made its report and recommendations for a general wage increase and changes in increments to become effective as of July 1,1946, and involving the expenditure *38 of more than $17,000,000 annually. This report was referred to the Board of Transportation, which is the agency for the management, operation and maintenance óf the transit facilities of the City of New York. The approval of that body was transmitted to the Board of Estimate of the City of New York in a communication dated October 16, 1946, and stating, inter alia, .as follows: “ These recommendations have been carefully considered b.y the Board of Transportation and all the recommendations, are approved by the Board which is prepared, with the two minor exceptions noted in the next paragraph, to incorporate them by appropriate resolution in its operating Rules and Regulations. The Board feels that the changes in compensation should be reflected in the payrolls at the earliest possible date, and agrees with the recommendation of the Mayor’s Advisory Transit Committee that the general wage increase and the increment changes should be made effective as of July 1, 1946. * * * Because of insufficient income the Board of Transportation cannot take action to pay these increases until- the Board of Estimate appropriates the $18,500,000 required.”
The current annual budget of the City of New York for the fiscal period commencing July 1,1946, had already been adopted prior to submission of the report of the Advisory Committee and approval of the Board of Transportation. This circumstance required that the City of New York raise the necessary moneys by interim financing prior to the adoption of its budget for the next fiscal year, if the recommendation to make wage increases, for the subway workers retroactive to July 1, 1946, was to be given effect. To this end the Boárd of Estimate adopted a resolution dated October 24, 1946, authorizing the issuance and sale of .budget notes to provide the $18,500,000 of required funds. ■ This resolution expressly referred to the report of the Advisory Committee and receipt of the communication of approval from the Board of Transportation. It also recited the requirement of section 36-b of the Rapid Transit Law that the Board of Estimate shall provide for the payment of any expenses of operation of the publicly-owned transit system to the extent that revenues derived therefrom are insufficient; The resolution provided that, pursuant to subdivision 2 of paragraph c of section 29.00 of the Local Finance Law, the comptroller be authorized to issue and sell budget notes of the City of New York in an amount not exceeding $18,500,000 to mature in the following year and be included in the annual tax levies, and that the proceeds thereof be used by the Board of *39 Transportation to the extent necessary to meet the deficit arising out of the adjustment of wages for subway employees.
The plaintiff contends that the action of the Board of Estimate in adopting such resolution was not authorized by the provisions of subdivision 2 of paragraph c of section 29.00 of the Local Finance Law and that the issuance and sale of budget notes of the City of New York pursuant thereto should be enjoined.
While the principal dispute involves a question of statutory construction, the plaintiff raises an additional point that requires preliminary discussion. The contention is made that regardless of the consideration whether this section of the Local Finance Law is sufficiently broad to cover the contingency of a deficit in the operation of the subway system, the City of New York has not been confronted with any actual deficiency nor any mandatory request for moneys to meet the same. It is said that only the statement of its desire to increase the compensation of subway workers has been presented by the Board of Transportation. We think that the plaintiff ignores the effect of the action taken by that body and closes his eyes to the realities of the situation with which the City of New York was faced. The action of the Board of Transportation must be considered not only on the basis of what was said and the manner of submitting its request but also in the light of its powers. The report of the Advisory Committee had been forwarded to the Board of Transportation as the agency which alone had the sole power to effectuate its recommendations. In Matter of Colbert v. Delaney (249 App. Div. 209, affd. 273 N. Y. 626) this court held that the Board of Transportation was carrying on a State function in the operation of the municipal subway as agent for the City of New York. We further held that it had the power to fix the salaries of employees under its jurisdiction and that the Board of Estimate was required to appropriate whatever sums were requisitioned by the Board of Transportation for subway purposes. The obligation imposed on the City of New York to provide for the payment of the cost of operating the subway system to the extent that revenues are insufficient is clearly defined by statute (Rapid Transit Law, § 36-b).e
In this view of the matter we think that the City of New York had the right and was charged with the duty of preparing to meet the deficit certain to follow the action announced by the Board of Transportation in regard to wage increases for the subway workers. There is enough in the circumstances of *40 the situation to show the creation and existence of a deficiency in the operation of the transit system and a mandate by the responsible agency for its payment rather than the mere expression of an inclination to increase wages. The fact remains that the City of New York is obliged to supply funds to meet salaries of employees of the Board of Transportation where revenues from operation of the subway system are insufficient. (See Matter of Colbert v. Delaney, supra.) This obligation to provide the moneys currently needed is not affected by the circumstance that operating revenues are inadequate and no-budgetary appropriation has been made or ear-marked for such purpose. The issuance and sale of budget notes for temporary financing was the only-method available to obtain such funds during the current year. The resolution passed by the Board of Estimate merely authorized the issuance of budget notes, which, however, need not be sold until the money is actually required.
Turning to the basic» question of statutory construction involved in this case, we are required to decide whether the issuance and sale of $18,500,000 in budget notes as -presently contemplated is sanctioned by the provisions of subdivision 2 of paragraph c of section 29.00 of the Local Finance Law. This enactment was adopted by the Legislature in 1942 and finally became effective on September 1, 1945. (See L. 1942, ch. 424; L. 1945, ch. 340 and L. 1945, ch. 837-, § 31.) It was the result of recommendations by the Temporary State Commission for the Revision and Codification of the Laws Relating to Municipal Finance. The statute is intended to be the sole and exclusive law applicable to local financing (§ 176.00) and should be liberally construed (§ 180.00).
We must resolve the issue in this case on a realistic basis and proceed on the assumption that the Local Finance Law was enacted by the Legislature with full knoAvledge that the City of New York was operating a subway system in Avhick it had an investment exceeding $1,500,000,000 and against which there was an outstanding funded debt approximating $1,150,000,000. It further knew that this extensive enterprise was subject to all the vicissitudes of private business. In view of this the Legislature must have intended to provide a method for the effective financing of obligations arising from the operation of the publicly-oAvned transit system as well as those arising in connection with ordinary governmental activities of local governments including the City of Nbay York. The object of the Local Finance *41 Law is to provide for uniform rules and sound methods of financing, while permitting at the same time the development of affective financial administration by municipal officials. (See Scope and Basis of the Local Finance Law by Stephen M. Lounsberry, Esq., McKinney’s Consolidated Laws of New York, Book 33, pp. ix-xviii.)
In section 29.00 of the Local Finance Law, so far as material, it is provided as follows:
“ § 29.00 Budget notes.
a. 1. Any municipality or district corporation, other than a fire district, may issue budget notes during any fiscal year for any unforeseeable public emergency during such year such as epidemic, conflagration, riot, storm, flood, earthquake or other unusual peril to the lives and property of the citizens of such ‘unit of government in such amount as the finance board shall determine to be necessary, but no municipality may issue such notes for emergencies in behalf of any local improvement district.
2. Any municipality or district corporation which adopts an annual budget may issue budget notes during any fiscal year for expenditures for which an insufficient or no provision is made in the annual budget for such fiscal year but not in excess of the following limitations: * * *
(c) If the amount of such annual budget is more than five hundred thousand dollars, the amount of such notes shall not exceéd the sum of sixteen thousand dollars plus a sum not exceeding one percentum of the amount by which such budget is in excess of five hundred thousand dollars. * * * If, however, any such municipality or district corporation may issue budget notes for any such expenditures pursuant to the provisions of any other paragraph of this section, such municipality or district corporation ' shall not issue budget notes for any such expenditures pursuant to this subdivision. * * *
c. Any city which is required pursuant to law to include annually in its annual budget an amount for:
1. Judgments which may be obtained against the. city and which may become due and payable during the fiscal year for which the budget is adopted,
2. Claims which may be settled or compromised and become payable during such fiscal year, and
3. The repaving of streets
may issue budget notes for any of such purposes during a fiscal year if the amount included in the annual budget for such fiscal year is insufficient therefor.”
*42 It is clear that the amount of budget notes that may be issued under sub-paragraph (c) of subdivision 2 of paragraph a of this section is limited in accordance with a fixed formula, whereas those authorized by paragraph c are unlimited in amount but restricted in scope and purpose. It is conceded that the limitations of the former foreclose the possibility of issuing budget notes thereunder in the required sum of $18,500,000 to meet salary increases for subway employees. The necessary funds, however, could be made available by the issuance and sale of budget notes under subdivision 2 -of the latter paragraph if their purpose and object may be classified as the payment of a claim “ which may be settled or compromised ” within the meaning of that phrase as used in the statute.
Prior to the adoption of the Local Finance Law it had been provided in section 249 of the New York City Charter that certificates of indebtedness termed “ tax notes ” might be issued for purposes of temporary financing between budget periods. This had been preceded by section 188 of the Greater New York Charter authorizing certificates of indebtedness commonly known as “ special revenue bonds ” for like purposes. The issuance of such temporary obligations was permitted in unlimited amounts for the payment of claims, judgments, charges and expenses against the City of New York. (See New York City Charter [1938], § 249, subd. a, par. [1] ; Greater New York Charter, § 188, subds. 3, 7.) The authorization for temporary financing in limited amounts for other purposes was. to be found elsewhere in the charter provisions.
The material portion of section 249 of the New York City Charter as it existed prior to its repeal on adoption of the Local Finance Law (see L. 1943, ch. 712, § 3, as amd. by L. 1944, ch. 605, § 1, and L. 1945, ch. 339, § 2) had read as follows:
“ Tax Notes. •
“ § 249. a. The comptroller may, when authorized by the board of estimate, borrow during any fiscal year: (1) So much of the amounts that may be necessary for the purposes and objects specified in section one hundred seventeen, item five, as shall exceed the amounts appropriated therefor in the budget for such year.”
The purposes and objects as specified in section 117 of the New York City Charter are as follows:
“ Items to be Included in the Budget. * * * There shall be included in the budget: * * *
*43 “ 5. The amounts as certified by the comptroller equal to the average of all expenditures during each of the five preceding fiscal years for each of the following purposes :■ (a) The payment of claims, judgments, charges and expenses lawfully payable by the city for which no other appropriation is included in the budget * * V’
This provision (§ 117) continues in force and remains unaffected by the enactment of the Local Finance Law. It clearly indicates a requirement that the annual.budget for the City of New York include an appropriation based on a five-year average that would represent an estimate of sums necessary to meet expenditures for the payment of “ claims, judgments, charges and expenses.” The appropriation of such amount as estimated would tend to reduce the cost of temporary financing to the municipality. That there might be expenditures beyond such estimate for the stated purposes was evidently recognized and provision for such contingency made in section 249 of the New York City Charter. Thus, it is apparent that at least prior to the Local Finance Law there existed statutory authority for the City of New York to issue “ tax notes ” or “ special revenue bonds ” in any amount to cover “ claims, judgments, charges and expenses ” lawfully incurred and for which no sufficient appropriation had been provided in the annual budget. The charter provisions clearly would have embraced any amounts needed to meet the subway deficit with which we are presently concerned.
This brings us to a consideration of the question whether the repeal of section 249 of the New York City Charter on enactment of the Local Finance Law leaves the City of New York without any remedy or means to provide for the deficiency in the cost of operating the municipally-owned subway system under the circumstances of this case. In other words, we are to decide whether the language of section 29.00 of the Local Finance Law evidences a legislative intent to impose some new limitation on the City of New York in the matter of temporary financing for an extraordinary claim of the present nature.
The plaintiff contends that subdivision 2 of paragraph c of section 29.00 merely refers to claims of a “ routine ” nature against the City of New York. In this connection he apparently limits such claims to those based on contract or tort liability,' which the comptroller might compromise pursuant to subdivision d of section 93 of the New York City Charter and sec-' tion 93d-1.0 of the Administrative Code of the City of New *44 York. The plaintiff says that a deficit in the operating expenses of the subway system does not come within the classification of “ claims which may be settled or compromised,” but must be regarded as an “ expenditure ” within the limitations of subdivision 2 of paragraph a of section 29.00 of the Local Finance Law.
The defendants stress the consideration that the grouping of “ claims which may be settled or compromised ” with items over which the City of New York has no control shows an intention to embrace claims of a mandatory character and that the request of the Board of Transportation for payment of a deficit in the expense of subway operation constitutes a claim of this nature.
We have determined that the contention made by the defendants has the greater support from an historical standpoint and from a consideration of applicable principles of statutory construction.
The word “ claims ” was found .in the earlier statutes in a group for which interim financing was unlimited. (See New York City Charter [1938], § 249, subd. a, par. [1] ; Greater New York Charter, § 188, subd. 7.) In the present law it is to be found in a similar setting, though qualified by the phrase “ which may be settled or compromised.” (See Local Finance Law, § 29.00, par. c.)
“ What is a claim? It is, in a just juridical sense, a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty.” (Prigg v. Pennsylvania, 16 Pet. [U. S.], 539, 615; see, also, Matter of Levine [Town of Fallsburgh], 287 N. Y. 243, 245). Under present circumstances it would seem that the Board of Transportation has made a d -mand as of right upon the City of New York to do an act as a matter of duty in the way of providing adequate funds for payment of wage increases to the subway workers. Certain it is that this would constitute ft' claim within the definition of such term standing alone. For the purposes of this case, however, we must decide whether it may be regarded as a claim “ which may be settled or compromised.”
■ It should be remembered that the Local Finance Law is a codification and revision of existing law. In such circumstances it will be presumed that no change in the law was intended in the absence of a clear expression of legislative purpose to effect such change. (Henavie v. N. Y. C. & H. R. R. R. Co., 154 N. Y. 278, 281; Hall v. Western Transportation Co., 34 N. Y. 284, *45 286-287; Douglass v. Howland, 24 Wend., 35, 45-48; McAvoy v. City of Nevo York, 52 App. Div. 485, 488; Croswell v. Crane, 7 Barb. 191, 195; Humbert v. St. Stephen’s Church, 1 Edw. Chan. 308, 312.) If it was the legislative intent to impose a limitation on the financing of a claim of the present nature, we think that such purpose has not been clearly expressed in the language of section 29.00 of the Local Finance Law with which we are concerned in this case.
The general purpose of this section is to provide for interim financing. Subdivision 1 of paragraph a gives unlimited power to issue budget notes to meet any unforeseeable public emergency or unusual peril of specified classes. The provisions of subdivision 2 of paragraph a relate to “ expenditures ” which might have been budgeted, but for which no sufficient appropriation was made. This classification has been described as “ Budgetary deficiencies ” (Local Finance Law Handbook for Cities [1945 ed.], p. 43, published by the Municipal Finance Commission). It thus appears that this subdivision was intended to be confined to regularly recurring items of expense for which a municipality should make some provision in its budget and over which it might be said to have some degree of control. In respect to items of this nature a limitation is placed upon the amount of temporary financing permissible. However, in paragraph c applying exclusively to the City of New York (Local Finance Law Handbook for Cities [1945 ed.], p. 40) the amount of temporary financing is unlimited in relation to such matters as judgments, claims, and the repaving of streets, the requirements of which are largely fortuitous and beyond the control of the municipality. The most that can be done in preparing to meet such items is to make an appropriation estimated on the basis of past experience. A subway deficit is such an item over which the City of New York may be said to have no control. It is payable under a statutory mandate (Rapid Transit Law, § 36-b). That the City of New York took the initiative in trying to settle the wage dispute of the subway workers did not make payment of the deficit occasioned by the grant of salary increments any less mandatory once such increases were approved by the Board of Transportation.
Thus, it would seem that a mandatory claim of the character involved in this case more properly belongs under paragraph c of section 29.00 covering items beyond the control of the City of New York rather than under subdivision 2 of paragraph a *46 relating to “ expenditures ” where some control is evidently contemplated. Furthermore, by the very terms of the latter subdivision there may be no recourse to its provisions where budget notes may be issued pursuant to any other paragraph of the section.
It is suggested, however, that the very nature of a subway deficit as constituting a mandatory claim excludes it from the classification of “ claims which may be settled or compromised.” While contending that only “ routine ” claims based on contract or tort liability are embraced within this classification, the plaintiff admits that it is proper to regard as claims subject to settlement or compromise those arising from tortious act or breach of contract where the justice and legality of such claims are conceded by a municipality. Of course, if it were otherwise, the obvious alternative would be the simple expedient of allowing the entry of judgments that' might be satisfied by temporary financing limited only by the amount of recovery. It is difficult to understand why claims mandated by statute should not also be subject to settlement or compromise in the same manner as “ routine ” claims based on contract or tort where liability is undisputed and come within the same classification.
We find nothing in the nature of a mandatory claim that necessarily excludes it from the category of ‘ ‘ claims which may be settled or compromised.” The omnibus character of such expression is attested by the joint use of the words “ settled or compromised.” This choice of terms was deliberate and the, product of research to “ determine if there is any real difference or merely repetitious * * * ”. (Temporary State Commission for Revision and Codification of Laws Relating to Municipal Finance, Minutes of October 2, 3 and 4,' 1941.) The reply of the staff for the revisers conducting this research on the choice of language states that “ the words when used together are commonly understood by lawyers, as words of art, to include non-disputed claims as well as disputed claims and that the courts will recognize such usage * * * ” (Revised Sections of Proposed Local Finance Law * * * Proposed by Temporary State Commission, etc., November 15, 1941, p. 18, f. n. 15). To describe a claim as one that may be settled or compromised is simply another way of saying it is one that is lawfully payable. This consideration extends to mandatory claims as well as all others of a lawful nature. The word “ mandatory ” as applied to a claim is a term of art merely descriptive of its origin and nature. In a legal sense, however, *47 a claim mandated by statute is not more or less obligatory than a claim arising from contract or tort where liability is clear and conceded; All stand on the same footing in law and must be regarded in pari materia as non-disputed claims. Each may be enforced by legal proceedings that will result in judgment directing payment. Of necessity and in the same sense each must be subject to settlement or compromise. Thus, .in construing the phrase “ claims which may be settled or compromised ” for the purpose of determining its extension or application, it would seem to us to make no difference whether the absolute nature of the claim stems from a statute or is rooted in some other ground of obligation ex contractu or ex delicto.
In any event it seems perfectly clear that a failure on the part of the City of New York to provide interim financing for payment of a deficit in the operation of the subway system must inevitably lead to judgment against the municipality. Under such circumstances there would be no question of the power to issue budget notes in any amount required to satisfy such judgment pursuant to the provisions of subdivision 1 of paragraph c of section 29.00 of the Local Finance Law. Thus, where the City of New York had refused to "pay a mandatory county charge on the ground that its appropriation for the purpose had been exhausted, it was held in an, earlier case involving subdivision 7 of section 188 of the Greater New York Charter that ‘ ‘ special revenue bonds ’ ’ equivalent to the present budget notes were required to be issued for payment of the claim. (See Matter of McGuire v. Prendergast, 159 N. Y. S. 658, affd. 172 App. Div. 909, affd. 218 N. Y. 630.) We cannot conceive, however, that the Legislature intended to mandate a duty upon the City of New York to meet subway deficiencies which at times might reach extensive proportions and then only permit the exercise of the power to meet such deficits through interim financing after the entry of judgment.
For the foregoing reasons we hold that the order denying the plaintiff’s motion for a temporary injunction and dismissing the complaint and the judgment entered thereon should be affirmed, with costs.