In the Matter of FRANCES S. CONNOLLY, Individually and on Behalf of All Other Electors of the City of New York, Similarly Situated, Petitioner, against MURRAY W. STAND, as City Clerk of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, October 1, 1948.

*Hyman N. Glickstein, Paul L. Ross, Ralph Shapiro* and *Hyman Joseph* for petitioner.

*John P. McGrath, Corporation Counsel* (*W. Bernard Richland, Bernard Friedlander* and *Victor F. Condello* of counsel), for Murray W. Stand, as City Clerk of the City of New York, and others, respondents.

*Reginald S. Hardy* for James Clark and others, respondents.

*Harold Riegelman* for Robert W. Dowling, intervener, respondent.

*Asher W. Schwartz* for Michael Quill, intervener, respondent.

COHALAN, J.   Petitioner filed in the office of the respondent Murray W. Stand, City Clerk of the City of New York, a petition of some 5,600 pages purporting to be signed by over 94,000 voters.   Its heading read:

" PETITION

FOR SUBMISSION TO THE ELECTORS OF THE CITY OF NEW YORK

OF

an amendment to the New York City Charter to enact a new chapter providing for the creation of a new office, the Depart-

ment of Transportation of the City of New York, at the head of which shall be a Commissioner of Transportation; prescribing the authority, duties and powers of the Commissioner of Transportation, fixing the rate of fare at not more than 5¢, providing for a referendum for any change of fare; and providing for a transfer of powers, personnel, records, facilities and equipment to the newly created office from the Board of Transportation of the City of New York and to supersede certain provisions of the Rapid Transit Law of the State of New York as enacted by Chapter 800 of the laws of 1941 as amended.''

The main document consists of some fifteen sections and of thousands of words. The city clerk duly submitted the petition to the Corporation Counsel and was informed by the latter (September 7, 1948) '' that no abstract or proposition prepared by you would be valid and effective to achieve the objects of the petition,'' etc.

It will be seen that the proposed amendment, if adopted, would set up the new office of Commissioner of Transportation and would accomplish the re-establishment of the five-cent fare.

Petitioner now brings a proceeding under article 78 of the Civil Practice Act for the relief denied her by the respondents. The respondents interpose numerous objections, among others: (1) that the transit situation is controlled by the Rapid Transit Law of the State of New York; (2) that the petition is defective under the provisions of section 44 and section 45 of the City Charter; (3) that it violates section 375 of the charter; (4) that it has administrative proposals which cannot properly be made the subject of a charter amendment; (5) that it has proposals which would violate the Civil Service Law of this State and the civil service provisions of the Constitution (art. V, § 6).

In her moving papers the petitioner relies on her interpretation of paragraph (2) of subdivision a of section 44 of the City Charter. It is therein provided that amendment to the charter may be made by the body of the electors. Paragraph (2) deals with the creation of new offices, including a transfer or disposition of the powers of an abolished office. It is qualified by this language: '' but no such amendment shall repeal or change any limitations contained in this charter on any power.''

An examination reveals that section 375 of the same charter reads: '' Nothing in this charter contained shall affect the provisions of the rapid transit act or the amendments or supplements thereto or article seven of the public service law.''

The Rapid Transit Law (§ 36) grants to the present Board of Transportation the power, with the approval of the Mayor,

to fix the fares on railroads municipally or publicly owned or operated under that law. The local Board of Transportation exists under article 2 of the Rapid Transit Law and at the present time operates the transit facilities of the city. The word " city " is defined in the Rapid Transit Law as one city containing more than one million inhabitants.

Any proposed amendment which would take from the Board of Transportation and the Mayor the powers granted under the Rapid Transit Law is in conflict with section 375 of the charter and consequently cannot be made under the provisions of paragraph (2) of subdivision a of section 44 of the same charter.

At the argument of this petition, the petitioner or some of those allowed to intervene as fellow-petitioners sought to take refuge in the amendment to the State Constitution of 1938, permitting the enactment of the City Home Rule Law, and in the provisions of the City Home Rule Law of 1939. (L. 1939, ch. 867.) As to this law, they argue: (1) that of itself it justified the petition; (2) that, read with section 44 of the charter, it justified the petition. An examination of the City Home Rule Law discloses that to justify submission of anything to the people the petition asking that relief would have to contain many more signatures than are here submitted. A reading of the law further discloses that it cannot be distorted into a mere addendum to section 44 of the charter. Section 30 of the City Home Rule Law establishes clearly that no action can be taken under it which would conflict with the existing Rapid Transit Law.

The further argument made that transit is now a matter exclusively of city concern, and not of State legislation, is fallacious. The State Legislature passed the City Home Rule Law in 1924 and amended it in its entirety in 1939. Since then it has frequently acted in matters of rapid transit affecting the city, the last amendment passed as recently as 1948, long after the adoption of the constitutional article and the City Home Rule Law. The decisions of our courts, both before and after the adoption of the home rule legislation, show clearly that the State Legislature is still empowered to act in the premises (*Matter of Queens-Nassau Transit Lines, Inc.,* v. *Maltbie,* 186 Misc. 494, affd. 271 App. Div. 81, affd. 296 N. Y. 893; *Wilmerding* v. *O'Dwyer,* 272 App. Div. 35, revd. on other grounds, 297 N. Y. 664; *Matter of Colbert* v. *Delaney,* 249 App. Div. 209, affd. 273 N. Y. 626).

Some attempt has been made to inject into this proceeding the economic and political aspects of the situation which have arisen

by reason of the tendering and rejection of the proposed amendment. The court has not and cannot give these matters any consideration, and confines itself solely to the legal problems presented.

For all of the foregoing reasons, the application is denied in its entirety and respondents may submit on notice an order dismissing the petition.